## WHOLESALERS ADJUSTMENT CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10681.

Circuit Court of Appeals, Eighth Circuit.
Feb. 8, 1937.

Harry Silverman, of Omaha, Neb., for petitioner.

Louise Foster, Sp. Asst. to the Atty. Gen. (Robert H. Jackson, Asst. Atty. Gen., and Sewall Key, Sp. Asst. to the Atty. Gen., on the brief), for respondent.

Before STONE, SANBORN, and VAN VALKENBURGH, Circuit Judges.

STONE, Circuit Judge.
This is a petition to review a decision of the Board of Tax Appeals affirming a

redetermination of the Commissioner assessing an income tax against petitioner for the year 1931.

The sole question for determination below and here is whether petitioner is a copartnership or is an "association" within the meaning of section 701, Revenue Act of 1928 (45 Stat. 791, 878), such associations being taxable as corporations under section 52 of the act (26 U.S.C.A. § 52 and note).

Petitioner was formed under an instrument which thereafter was amended and during 1931 was operative. Petitioner concedes that there is language in this instrument which is "unfortunate" but contends that the issue should be resolved regardless of the provisions of this instrument, provided the evidence shows that the concern "in its actual mode of operation has all of the characteristics of a partnership and none of a corporation." It is a part of or related to this contention that petitioner argues that the purpose and intent and desire of the parties was to form a partnership. While it would be going too far to say that what the parties may have done under the agreement, in so far as it affects their method of operation, should be entirely ignored, yet where they operate under an instrument the relationship between the parties should be governed by the terms of that instrument rather than by what the parties may have thought or even have done under it. Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373, 56 S.Ct. 285, 80 L.Ed. 278; Commissioner v. Vandegrift Realty & Investment Co., 82 F.(2d) 387, 390 (C. C.A.9). Unquestionably, determination of the relationship between the parties here must depend upon that created by this instrument.

The instrument itself is quite unique. It is easy to gather from it the motive and purpose. From it we see that Cyrus F. Howard had been engaged as an individual in the business of buying, selling, receiving and handling for collection all kinds of accounts, domestic and foreign notes, mortgages, and evidences of indebtedness of any nature or kind, for which he charged a commission. He deemed it advisable to give his employes the opportunity to buy interests therein. At the same time, he intended to retain control. The instrument sought to carry out these purposes in the manner following. The value of the business at the time was agreed to be $25,000 and eight employes were allowed to buy interests therein in amounts ranging from $100 to $5,000 with a total valuation of $7,800. The interest of each of these participants was required to be represented by "a certificate of ownership" to be issued by Howard. Those certificates were nonnegotiable except with the consent of Howard indorsed thereon; were transferable only on the books of the concern; could be revoked by Howard on payment therefor by him; must be transferred if the holder discontinued his services with the concern; and no additional interests were purchasble or new shares issuable without the consent of Howard. The arrangement was to continue for approximately ten years "or for a longer period, unless otherwise terminated by" Howard. Howard was to be "general manager" until he should resign. Dividends from earnings were to be declared and distributed annually with the consent of Howard. Money might be borrowed with his consent. Profits might be accumulated and used in the business with his consent. The liability of any of the parties, including Howard, "for any act of the company" was limited to the amount of interest owned by each party except that full liability remained against any holder "for his own negligence, breaches of contract or other defaulting acts." Also, the assets of any solvent participant (including Howard) acquired "before or with the proceeds of property held before the trust money came into his hands under the terms of this trust, and not in any way mingled therewith, shall not be subject to any lien or liability in any action against the company."

From the above outline of this instrument it would seem that the relationship established by it possesses qualities which would bring it within the statutory definition of an association. Those characteristics are continuity, centralized control and limitation of liability. Morrissey v. Commissioner, 296 U.S. 344, 359, 360, 56 S.Ct. 289, 80 L.Ed. 263; Swanson v. Commissioner, 296 U.S. 362, 364, 365, 56 S.Ct. 283, 80 L.Ed. 273; Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 373, 374, 56 S.Ct. 285, 80 L.Ed. 278; Commissioner v. Vandegrift Realty & Investment Co., 82 F.(2d) 387, 389 (C.C.A.9); Pelton v. Commissioner, 82 F.(2d) 473, 476 (C.C.A.7); and see Crocker v. Commissioner, 84 F.(2d) 64 (C.C.A.7).

Petitioner argues also that the relationship created by this instrument would be regarded as a partnership in the state of Nebraska where the contract was made and is being performed. It is not important whether, for many purposes or generally, a relationship would be declared to be a partnership under the State or under the common law as construed by federal courts. Pelton v. Commissioner, 82 F.(2d) 473, 476 (C.C.A.7). The question here is one of statutory construction as to what kind of organizations the Revenue Act of 1928 intended to tax under the classification "associations" contained in section 701 thereof.

The determination of the Board should be, and is, affirmed, and the petition to review is dismissed.