**THOMPSON, Collector of Internal Revenue, v. RIGGS.**

No. 13823.

United States Court of Appeals
Eighth Circuit.

May 20, 1949.

---

Morton K. Rothschild, Special Assistant to the Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott, and Fred E. Youngman, Special Assistants to the Attorney General, and James T. Gooch, United States Attorney, and G. D. Walker, Assistant United States Attorney, Little Rock, Ark. were on the brief), for appellant.

Lamar Williamson, Monticello, Ark., and James G. Williamson, Little Rock, Ark., for appellee.

Before GARDNER, Chief Judge, and RIDDICK and STONE, Circuit Judges.

STONE, Circuit Judge.

This is an appeal by the Collector of Internal Revenue from a judgment—entered on verdict—for refund of income taxes. The issue is the liability of appellee for the income in the tax year 1943 or the tax years 1942 and 1943,[1] of six trusts which were partners with appellee and with his son in the firm of J. A. Riggs Tractor Company. Appellant presents here two matters: (1) Insufficiency of the evidence to support the verdict and (2) error in denial of requested instructions.

I. Sufficiency of the Evidence.

This issue is whether or not the evidence is sufficient to support the verdict which determined that, for federal tax purposes, the six trusts were "bona fide" members of the partnership and tax liable for their respective parts of the partnership income. This being a question of fact, the verdict must be upheld if there is substantial evidence to support it. However, this matter must be examined with "special scrutiny," Commissioner v. Tower, 327 U.S. 280, 291, 66 S.Ct. 532, 90 L.Ed. 670, 164

A.L.R. 1135; Helvering v. Clifford, 309 U.S. 331, 335, 60 S.Ct. 554, 84 L.Ed. 788; Hartz v. Commissioner, this court, 170 F.2d 313, 318; Kohl v. Commissioner, this court, 170 F.2d 531, 534; Doll v. Commissioner, this court, 149 F.2d 239, 244, since this is a "family partnership" case.

Where a partnership relation does not exist under State law, even though attempted, the problem of "good faith" is hardly applicable because it is not of importance. The absence of such partnership relation is determinative. Appellant admits the existence of this partnership. Hence, such good faith is, for federal income tax purposes, our problem. This good faith is to be determined by examination of the entire situation "to decide who worked for, otherwise created or controlled the income," Commissioner v. Tower, 327 U.S. 280, 290, 66 S.Ct. 532, 537, 90 L.Ed. 670, 164 A.L.R. 1135; or, as otherwise phrased, "their intention * * * disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions,'" Commissioner v. Tower, supra, 327 U.S. at page 287, 66 S.Ct. at page 536, having in mind that "It is the command of the taxpayer over the income which is the concern of the tax laws." Commissioner v. Tower, supra, 327 U.S., at page 290, 66 S.Ct. at page 537. Study of the numerous income tax cases involving family partnerships [2] reveals the great variety of factual elements which may have weight in deciding this ultimate fact.

Here there is no material conflict in the evidence of the factual situation. For some years, the taxpayer had owned a majority of the stock in a corporation, the Arkansas Tractor and Equipment Company, engaged in the business of buying, selling and servicing tractors, engines and road machinery, which were mainly supplied to it by the Caterpillar Tractor Company under a territorial license from that company.

---

[1] The parties disagree as to whether the tax years involved are 1942 and 1943 or 1943 alone. This difference has no influence upon the issues here. The tax year began November first.

[2] In an appendix to his brief, appellee cites 133 family partnership cases, of which 71 have been determined since the Tower case and the Lusthaus case, Lusthaus v. Commissioner, 327 U.S. 293, 66 S.Ct. 539, 90 L.Ed. 679. Of these 133 cases, 22 have reached Courts of Appeals and, of these, 16 are since the Tower and Lusthaus cases. To these may be added Zander v. Commissioner, 5 Cir., 173 F.2d 624.

In 1930, his only child, J. A. Riggs, Jr., finished school and came into the business. Because minority stockholders pressed for distribution of profits and because these dividends were needed in the business and payment of them necessitated borrowing to carry on the business, taxpayer and his son proceeded to buy up this stock. In 1937, they bought the last of this stock. At that time, taxpayer owned 60% and the son 40% of the stock. In that year, they changed the organization into a partnership with the same relative interests therein. This status continued until December 24, 1938.

Taxpayer was then in bad health and desired to retire from active management and to have his son take over control. To accomplish these purposes and to provide for his wife and the family of his son (wife and four children), he irrevocably created six separate individual trusts, conveying to each a 5% interest in the partnership business from his 60%. Right after creation of the trusts, a new partnership contract was executed by taxpayer, his son, and the trustees of the six trusts. The immediate timing of these actions seems to have been caused by the situation that the federal gift tax provisions would become unfavorable on January 1, 1939. The value of each interest conveyed was $10,000. This suit is because taxpayer was, in July 1947, redetermined to be liable for the incomes from the partnership of these trusts during the tax years 1942-1943.

The trustees in each trust were appellee, his son, and the Union National Bank of Little Rock with a provision that if John A. Riggs III should reach maturity and be then competent and willing to serve, he should become an additional trustee.[3] As to the "management and control" of the partnership business, authority to speak for the trust was in appellee and his son (and John A. Riggs III, if and when he might become a trustee) to the exclusion of the Bank, which, as to such matters, was to be a "naked trustee, exercising no discretion and being charged with no liability or responsibility for or arising out of the conduct of said partnership business." The trusts were to participate pro rata in net earnings and losses of the partnership—the assets of the trusts and not the trustees being subject to all liabilities of the partnership. The trustees might receive or acquire any kind of property, and such additions together with the undivided interest in the partnership were to be deemed the corpus of the trust estate. The "distributable and distributed annual net earnings and profits" of the partnership together with earnings derived from other assets were to be deemed income of the trust. The trustees were empowered to withdraw from the partnership or to acquire additional interests therein, but such decision was limited to appellee and his son or the survivor. In other respects than before stated, the three trustees were equal. The income from the trusts to the two wives was to be periodically distributed while that of each trust for a child (all then minors) was to be held until marriage, majority or death. Other provisions relating to succession and termination of the trusts varied somewhat and are not particularly material here, except that there was no provision for nor likelihood that anything could ever revert to the taxpayer.

The only matters to be noted in the new partnership agreements are as follows. The management was vested in appellee, his son and John A. Riggs III (upon reaching maturity and while he retained an interest in the business either as trustee or individually) provided that any disagreement should be resolved by taxpayer so long as he retained an interest in the business individually or as trustee, and thereafter by his son likewise. The partnership was to continue in event of death of a partner or of a trust beneficiary or of withdrawal by any trust. The surviving partners could, within a reasonable time, purchase the interest of such at net book value and no partner could sell his interest outside without the consent of all. The trust for John A. Riggs III had an option to purchase the partnership interest of any of the other trusts at net book value.

We pass next to what was done under the foregoing instruments. Taxpayer retired immediately from active management

---

[3] There is evidence that appellee desired not to be a trustee but to have a brother-in-law of his son do so.

and the son—up to that time a department manager—took over and continued to manage the business until he entered the Army June 15, 1942. During this period, appellee was away from Little Rock much of the time. The latter part of 1938, he had gone through the Mayo Clinic and an operation was advised. After spending some weeks in Hot Springs, he underwent a major operation in June, 1939. Thereafter, he went to Honolulu, returning in September. During 1940, he spent a month in Hot Springs and two months in California. In 1941, he was away a month. When not away, he spent most of his time out on his stock farm near Little Rock. He would go into the office two or three times a week, sometimes every day, read his mail and return to the farm. A few partnership matters were discussed with his son and Mr. Bowen (trust officer for the Bank).

When his son ( a reserve officer) went into the service, appellee took over the management, immediately appointing an assistant manager who took on the sales and parts divisions of the business. On account of his health both he and the Caterpillar people thought he should not undertake the management. The main reason he went back into the business was that he felt it was his "duty to go back in there and take care of the interest of John and the children's interest." At that time, he arranged with Mr. Bowen to advise with him about partnership matters and, thereafter, he did not undertake any major decision without consulting with Mr. Bowen. He followed the advice of Mr. Bowen in practically every such matter and never exercised his right to control decisions. Several instances were given where he had differed with Mr. Bowen but had followed his advice.

The Caterpillar Company insisted upon expansion of the business, involving erection of buildings in Memphis, Ft. Smith and the southern part of Arkansas. This was in the midst of the war when profits were large. The position of Mr. Bowen was that with appellee in poor health and the son in the Pacific there was a greater probability that the business might have to be liquidat-

ed; and, therefore, he (Bowen) "had the attitude we ought to hold the thing in instead of expanding," until the son might return. Finally, when it became apparent in 1944 that the partnership income would be much less than in 1942 and 1943; that the war was approaching an end; that the license from the Caterpillar Company might be cancelled unless the expansion was made; and that such expansion would require trust funds to be put back into the partnership or funds must be borrowed for which the trusts (as partners) would be liable, Mr. Bowen suggested that the trusts be withdrawn from the partnership. At that time, each of the four trusts for the children had outside investments (bonds, warrants, etc.) of at least $75,000.

The withdrawal of the trusts was accomplished in the wise following. At that time, the capital worth of the partnership was $600,000. It was arranged to sell the trust interests to four employees of the corporation who had risen to responsible positions. They could not provide funds to the required value of the trust interests in the business. Therefore, there was a distribution to the partners of $300,000 leaving a partnership capital value of $300,000 or a value of $15,000 for each of the trusts. On that basis, the employees made substantial cash payments and gave notes for the balance. The withdrawal was perfected October 31, 1944, for a consideration of $15,000 for each trust; each of the four purchasers acquiring a 7½ per cent interest in the partnership.

At that time, an action was pending in the Tax Court based on the contention that the partnership should be taxed as an "association" equivalent to a corporation, with individual liability of the partners (including the trusts).[4] Since the trusts were withdrawing but would have been liable for this past tax liability, Mr. Bowen required, for protection of the trusts of the children, that the distributive shares of the trusts for the two wives be delivered to him and that appellee and his son execute contracts not to use their distributive shares except in partnership business nor to allow the capital to fall below $300,000 by with-

---

4 This proceeding was later determined favorable to the taxpayers. J. A.

Riggs Tractor Co. v. Commissioner, 6 T.C. 889.

drawal as partners—both until the tax suit be favorably determined or any determined liability satisfied.

After the withdrawal of the trusts, the expansion program was carried out but it was delayed and prevented by Mr. Bowen until the withdrawal. Upon the return of the son from the war, he resumed the active management replacing his father who retired to his farm as before.

Investments for the trusts have been made by the Bank, usually with the approval of appellee. While some of the income from the partnership coming to the trusts was, in the early years, left in the partnership, more of such income was invested otherwise. Having in mind these investments at the time the trusts withdrew and the amount received on sale of the trust interests in the partnership, the corpus of each trust for a child must be at least $90,000.[5] Appellee has never, directly or indirectly, received any of the income from the trusts. Appellee and his son each pays all family and personal expenses from his own funds.

At the time the trusts were created, the income tax of appellee was less than $5,400 and he could not foresee the large future earnings—beginning three years later— resulting from the war. The matter of the effect of the trusts upon his income tax had nothing to do with creation of them.

From the foregoing outline of the evidence as to the instruments and as to the conduct under them—and there is more detailed evidence to the same effect and none contrary—the following conclusions seem obvious. The trusts and the succeeding partnership contract were genuine and in no respect shams. Avoidance of income tax by appellee had no place or influence. The trusts did contribute capital to the partnership. While the entire original corpus was in the partnership, it was left there, some future earnings' were left and further financial aid was given through a secured loan. A complete change in management was intended to and did result from the arrangement.

Appellee resumed management during the time his son was in the war only because of the compulsion of the situation which could not have been foreseen. During the time the son was in the war, the partnership received definite aid from the advice of Mr. Bowen, representing the Bank trustee. There has been a complete change in the economic status of appellee. As evidenced by these instruments and by the conduct of appellee and all parties thereto these trusts were created and this partnership formed in good faith and with no purpose of avoiding income taxation.

II. Denial of Requested Instructions.

In his "Statement of Points to be Urged" in his brief, appellant lists, by number or letter, twelve requested instructions which were refused. Under the same heading, appellant states that "they [the requests] all deal with the question whether the evidence justifies a conclusion that the six trusts established by J. A. Riggs, Sr., in 1938 for the benefit of members of his family were bona fide partners in the partnership of J. A. Riggs Tractor Company." Two matters are argued.

First. Appellant argues as follows: That the court emphasized that whether a bona fide partnership existed depended upon the intent of the parties in entering into the arrangement. That the court did not encompass the rule of law that this intent should be determined by their "agreement, considered as a whole, and by their conduct in execution of its provisions." That the scope of the charge given was such that the verdict appears to have been based upon the self serving statements of good intention rather than (as requested by appellant) upon a consideration not only of such statements but "also all other facts shown by the evidence which have a bearing on whether the trusts were bona fide members of the partnership for federal income tax purposes."

The Requests dealt with specific aspects. This objection is that the instructions emphasized the statements of intention instead of instructing that all of the

<hr>

[5] This is not true of the trusts for the two wives as any income from the partnership coming to those trusts was distributed to the beneficiaries, while income to the trusts for the children was accumulated as required by the trust instruments.

86

evidence was to be considered—particularly, that the measure of intent was the instruments and what was done under them. The following quotation from the charge reveals the lack of substance in this position of appellant. The court charged:

"In determining the question of fact in this case of whether the partners really and truly intended to join together for the purpose of carrying on business as a partnership in good faith, you should take into consideration all the facts and circumstances shown by the testimony and exhibits in this case and all the reasonable inferences that may be drawn from the testimony. I will point out some of the things you may consider in determining what the partners really and truly intended, but no single one of the points I will mention will decide the issue. Rather, you should consider all the facts and circumstances and decide from the greater weight of evidence whether the partners really and truly intended to join together in good faith for the purpose of carrying on business as a partnership, whether the court has pointed out those facts or not.

"Among the things you may consider are the facts relative to organization of the partnership and the conduct of its business.

"You may consider the written partnership agreement itself for such light, as it may throw on the true intention and good faith of the parties in organizing a real business partnership.

"You may also consider what the parties did in carrying out the partnership agreement, because a written partnership agreement may be orally amended at any time by consent of the parties. This consent does not have to be expressed in words but may be evidenced by the conduct and actions of the partners. Therefore, the conduct of the partners, or what they actually did, may be better evidence than the original written agreement of their real and true intention in good faith to conduct their business as a partnership."

Second. A paragraph of the charge is as follows:

"You are instructed that the fact that the Internal Revenue Commissioner had recognized this as a partnership, if you find

it did, would not create an estoppel against the government, but it can be considered by you along with all the other evidence in the case as to whether or not there was a bona fide partnership in existence for tax purposes."

Appellant attacks this statement on the ground that the failure of the Commissioner to challenge the partnership for years prior to those here involved is immaterial and, therefore, this evidence as to a prior action should not have been considered. The instructions were considered and settled by the court with counsel out of the presence of the jury; and exceptions were taken at that time. The court, of its own motion, suggested the above quoted paragraph and, at that time, counsel on both sides stated "No objections." Appellant is thereby foreclosed from urging any objection thereto here.

The judgment is affirmed.