**WOODS v. PETCHELL et al.**

No. 13861.

United States Court of Appeals
Eighth Circuit.

June 7, 1949.

Louise F. McCarthy, Special Litigation Attorney, Office of the Housing Expediter, Washington, D. C. (Ed Dupree, General Counsel, and Hugo V. Prucha, Assistant General Counsel, Office of the Housing Expediter, Washington, D. C., on the brief), for appellant.

Perry W. Seaton, Kansas City, Mo., for appellees Pat McDonough, Rose Mather, Frank Thompson and Robert E. Logan.

Ira B. Burns and Burns & Burns, Kansas City, Mo., for appellee T. C. Petchell.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

THOMAS, Circuit Judge.

The appellee, Frank M. Thompson, is the owner and landlord of two three-story six unit apartment buildings situated within the Kansas City, Missouri, Defense Rental Area, and subject to the Housing and Rent Act of 1947, as amended. 50 U.S.C.A. Appendix, § 1881 et seq. The other appellees are his agents.

In this proceeding the appellant, Woods, Housing Expediter, Office of the Housing Expediter, brought suit under § 206(b) of the Act to enjoin defendants-appellees from directly or indirectly evicting or attempting to evict the tenants from the two structures, charging that such acts violated § 209 of the Act. The facts were stipulated, and the court found for the defendants and entered judgment dsimissing the complaint. This appeal followed.

Thompson sought to evict his tenants occupying the two structures to enable him to sell and convey to different persons each individual apartment therein. The question presented is whether, such plan and purpose having been consummated, the several purchasers of the apartments in each building will constitute "a cooperative corporation or association" within the meaning of § 209(a) (2) of the Act.

The agreed statement of facts discloses that notices have been served by defendants upon the tenants in the subject structures to vacate their respective apartments; and that Thompson, the owner, has entered into contracts for the sale of some units in the apartment structures (but less than 65 per centum of all units), and that he intends to issue general warranty deeds conveying fee simple title to the interests purchased.

A copy of the contract of sale used in the selling of such units is set out in the stipulated facts. It shows that the interest sold to each purchaser is defined in a "standard plural residence declaration" filed of record. A copy of the Declaration referred to is attached to the contract. It provides that each structure is divided into six separate "interests" for the purpose of sale and management, each of which is made subject to the restrictions, agreements, covenants, charges and assessments stated in the Declaration.

An interest consists of two parts: (1) a "private apartment" for living quarters including a living room, dining room, sun room, kitchen, bathroom, 2 bedrooms and 3 closets together with the floors, inner surface of the walls and ceilings including the lath and plastering, partitions, doors, windows, trim, decorations, heating, lighting and water supply apparatus, and other parts wholly within the private apartment; and (2) an undivided one-sixth interest in the "common property" which term includes all the real estate and improvements thereon not included in the term "private apartment."

The Declaration provides, also, for a "Managing Trustee" who shall have complete charge of the operation of the apartment property with all the power and authority usually belonging to the owner of such property. It is his duty to estimate annually the amount necessary to operate the structure, to pay the taxes and insurance, to pay for heating, repairing, janitor and other necessary services, and compensation for himself, and to levy an assessment for one-sixth of such estimate against each interest, payable in equal monthly installments in advance. Upon failure to pay an assessment the owner may be evicted, his apartment rented by the Manager and credit given the owner for the rentals collected.

There are no provisions in the Declaration for the organization of Associations, or the adoption of By-laws, or the election

of officers, other than the election of the Managing Trustee. No organization or corporate structure is provided for, and no stock or stock certificate is issued to any purchaser. There is no provision for the leasing or renting of apartment units to a purchaser, and no such leases are made by the sellers to the purchasers. Title to each individual unit passes by deed, will or descent and not by assignment of lease or of stock certificate.

Five units in the two appartment buildings have already been vacated by the tenants, and the defendants propose to proceed with the eviction of the remaining tenants in accordance with the Declaration and the contracts.

The trial court found the facts as stipulated and concluded that

1. The subject premises are not structures owned or leased by a cooperative corporation or association within the meaning of § 209(a) (2) of the Housing and Rent Control Act of 1947, as amended, and that

2. The acts of the defendants described in the agreed statement of facts do not constitute violations of the Housing and Rent Control Act of 1947, as amended, denied an injunction and dismissed the complaint.

Section 209 of the Housing and Rent Control Act of 1947, 50 U.S.C.A.Appendix, § 1899, relates to actions or proceedings for the eviction of tenants by landlords seeking to recover possession of controlled housing accommodations. Subsection (a) provides that no such action shall be maintainable unless

"(2) the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations, * * * Provided, That in the case of housing accommodations in a structure or premises owned or leased by a cooperative corporation or association no action or proceeding under this paragraph or paragraph (3) to recover possession of any such housing accommodations shall be maintained unless stock in the cooperative corporation or association has been purchased by persons who are then stockholder tenants in occupancy of at least 65 per centum of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises; but this proviso shall not apply where such corporation or association acquires or leases such structure or premises after the effective date of the Housing and Rent Act of 1948 pursuant to a contract entered into prior to such date;

"(3) the landlord has in good faith contracted in writing to sell the housing accommodations to a purchaser for the immediate and personal use and occupancy as housing accommodations by such purchaser."

Section 206(b) of the Act 50 U.S.C.A. Appendix, § 1896(b), provides:

"Whenever in the judgment of the Housing Expediter any person has engaged or is about to engage in any act or practice which constitutes or will constitute a violation of any provision of this title, he may make application to any Federal, State, or Territorial court of competent jurisdiction, for an order enjoining such act or practice, or for an order enforcing compliance with such provision, and upon a showing by the Housing Expediter that such person has engaged or is about to engage in any such act or practice a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

Under § 206 the Housing Expediter was authorized to bring this action in the Federal court, although a proceeding in eviction of a tenant is within the exclusive jurisdiction of the state courts. Woods v. Hillcrest Terrace Corporation, 8 Cir., 170 F.2d 980, 984; Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199.

The decisive question for determination is whether the purchasers of interests in the apartment structures will, under the deeds of conveyance and the restrictions and plan of operation provided in the Declaration, constitute a cooperative association within the meaning of § 209(a) (2) of the Act, supra. If so, the court erred in denying an injunction; if not, the judgment must be affirmed. Upon this point the parties do not agree as to the controlling law. Without laboring the point,

we think the incidents of title are governed by Missouri law, Clarke v. Clarke, 178 U.S. 186, 20 S.Ct. 873, 44 L.Ed. 1028; but that the meaning and application of the Housing and Rent Act is controlled by federal law. Schwabacher v. United States, 334 U.S. 182, 68 S.Ct. 958, 92 L.Ed. 1305; Porter v. Lee, 328 U.S. 246, 66 S.Ct. 1096, 90 L.Ed. 1199; National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170; Case, Commissioner, v. Bowles, 327 U.S. 92, 66 S.Ct. 438, 90 L.Ed. 552; Wholesalers Adjustment Co. v. Commissioner of Internal Revenue, 8 Cir., 88 F. 2d 156; Woods v. Hillcrest Terrace Corporation, 8 Cir., 170 F.2d 980. Applying these rules, technically under Missouri law, the purchasers of interests in the subject apartment structures will as to the "private living apartments" be adjoining tenants, and as to the "common property" they will be tenants in common. Badger Lumber Company v. Stepp, 157 Mo. 366, 57 S.W. 1059. A building, under Missouri law, is not necessarily a part of the real estate. Title to the building and to the land on which it stands may be separated by contract and the building then becomes personal property. Marshall v. Moore, 146 Mo. App. 618, 124 S.W. 585. Since the living apartments could not be occupied or operated without cooperation of their owners and tenants with the owners of the building, the owners will for all practical purposes be tenants in common only.

We are not concerned here with the power of Congress to include in the term "cooperative association" a group of owners of an apartment structure related as these owners will be but only with the question of whether it was the intention of Congress to do so. The rules for resolving this question are well settled.

■■■■ The goal of construction is to discover the legislative intent, but there is no invariable rule for the discovery of that intention. The construction given to the language of the statute must be a sensible one. If the words used by the legislature are sufficient in themselves to determine the purpose of the law those words must be given their plain meaning. But if a literal application of a statute would lead to absurd results such consequences must be avoided if possible and be consistent with the legislative purpose. If such result be not absurd but merely unreasonable and at variance with the policy of the legislation as a whole the court must then follow the purpose and not the literal words. In ascertaining that purpose the court may examine the title to the Act, the source in previous legislation of the particular provision in question and the legislative scheme or plan by which the general purpose of the Act is, to be carried out. When aids to the construction of the meaning of words as used in the statute are available such aids must be resorted to, however clear the words may appear on superficial examination. In so far as the meaning of the words "cooperative association" involves the regulations and interpretations of the Price Administrator under the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., his interpretations are entitled to great weight. Boutell v. Walling, 327 U.S. 463, 471, 66 S.Ct. 631, 90 L.Ed. 786; Roland Electrical Co. v. Walling, 326 U.S. 657, 676, 66 S.Ct. 413, 90 L.Ed. 383; Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 413–414, 65 S.Ct. 1215, 89 L.Ed. 1700. And, finally, the interpretation of the meaning of a statute as applied to justiciable controversies is a judicial function. United States v. American Trucking Associations, Inc., 310 U.S. 534, 60 S.Ct. 1059, 84 L.Ed. 1345; United States v. Katz, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986; Lambur v. Yates, 8 Cir., 148 F.2d 137; and cases cited in those opinions.

Applying these rules of construction, it will be noted that the Housing and Rent Act of 1947 superseded the Emergency Price Control Act of 1942. That was an emergency war measure. The purpose of the original Act, continued as far as applicable in the latter Act, was "to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents * * * to protect persons with relatively fixed and limited incomes, * * * to prevent a post emergency collapse of values."

Prior to 1947 there had already developed under the Emergency Price Control Act

what was called a "cooperative racket." Steps had already been taken by the Price Administrator to limit evictions in furtherance of that "racket" when the Housing and Rent Act of 1947 superseded the Price Control Act. The Act of 1947 provided no control over such evictions and § 209(a) (2) of the Act of 1948 was intended to meet that situation.

The question now before us is whether Congress accomplished that purpose in the language used in the 1948 Act.

The appellant contends that the premises and the title thereto having been made subject to the restrictions in the Declarations the purchasers will constitute a cooperative association within the meaning of the Act; that the intent of Congress as shown by the legislative history of the Act demonstrates that it was the purpose of Congress that such multiple ownership as that created by the Declarations does constitute a cooperative association within the meaning of the proviso.

The appellees contend that the plan does not constitute such an association because (1) there are no provisions in the Declaration for the organization of associations, or the adoption of by-laws, or the election of officers; because (2) no organization or corporate structure is provided for in the Declaration and no stock is provided for and no stock certificate is issued to any purchaser; because (3) there is no provision for proprietary leases; and because (4) the cooperative proviso, § 209(a) (2), does not apply.

■ A subsidiary contention of the appellees is that the remedy by injunction as provided for in § 206(b), supra, is not applicable because the purchasers of interests in the structures are not the defendants. This contention is without merit because the purchasers are not the parties who served the notices of eviction upon the occupying tenants. The serving of notices was the first step in a proceeding to recover possession of the premises to enable Thompson to give possession to the purchasers. If this is not a correct statement of the situation then the Expediter was entitled to an injunction because Thompson does not claim that he is seeking "in good

faith to recover possession of such housing accommodations for his immediate personal use and occupancy as housing accommodations" nor that he has contracted in writing to sell to "a purchaser for the immediate use and occupancy as housing accommodations by such purchaser."

■ The contention that the plan of selling the apartment structures provided for in the contract of sale, the deeds and the Declarations does not come within the statute for the reason that these instruments provide for no organization of the purchasers, no by-laws, no stock, and no proprietary leases is not tenable. The plan provides an equivalent substitute for every feature claimed to be absent. The Declaration in effect serves the purpose of by-laws and creates an organization of the purchasers of interests in each structure with power to elect a Managing Trustee. The deeds given the purchasers subject to the restrictions in the Declaration serve also as stock certificates. We think the legislative history of the Act demonstrates the soundness of such an interpretation of the Act, and that it is the only interpretation consistent with the intent and purpose of Congress. It is consistent also with the mathematical maxim that things which are equal to the same thing are equal to one another.

■ The meaning of the word "association" as used in the statute is not limited to any particular type of association created under state law and defined by state statute. Its meaning is to be determined by its usage in federal law. Wholesalers Adjustment Co. v. Commissioner of Internal Revenue, 8 Cir., 88 F.2d 156, 158. That Congress has not used the term in a narrow or restricted sense in the Revenue Laws is shown by the definition in Title 26, Chapter I, Code of Federal Regulations, Subchapter A, Par. 3, Subpart KK, Definitions 3.1001-2. As illustrating the broad meaning of the term in federal law, see Pickering v. Alyea-Nichols Co., 7 Cir., 21 F.2d 501, at pages 506 and 507.

Section 209(a) (2) had its origin in the rent control regulations promulgated by the Office of Price Administration under the Emergency Price Control Act of 1942.

As early as 1945, on account of the "cooperative racket" which had then grown up in an attempt to circumvent the rent law, purchasers of multi-unit buildings were required to obtain certificates to permit them to evict occupying tenants. A regulation specifying conditions under which a certificate would be issued was adopted. Subsection 6(b) (3) of Rent Regulation for Housing (10 F.R. 1973; 11 F.R. 8106) applied to apartment or multi-unit buildings. This subsection reads, "(1) This paragraph (b) (3) applies to the issuance of a certificate for occupancy of housing accommodations in a structure or premises owned or leased by a cooperative corporation or association * * * by a purchaser of stock or other evidence of interest (hereinafter called 'stock') in such cooperative who is entitled by reason of ownership of such stock to possession of such housing accommodations by virtue of a proprietary lease or otherwise * * *."

Subsection (b) (3) (ii) provided that under conditions named no certificate would issue "unless, at the time of issuance of the certificate, stock in the cooperative has been purchased by persons who are then tenants of at least 80% of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises."

It will be observed that the language used by Congress in § 209(a) (2) of the Housing and Rent Act of 1947 as amended in 1948 follows very closely the language of the quoted Regulation of 1945. Congress was undoubtedly familiar with that Regulation, with the experience under it, and the interpretation thereof by the Office of Price Administration. It was interpreted in Rent Memorandum 6(b)-1 published at 2 OPA Service, Rent, pp. 200: 2205–2207. There it was said that

"Whether the equity interest acquired by the individual purchaser (in a multi-unit building) is in the form of stock, a beneficial interest certificate, or *a deed conveying a fractional interest in the fee, or any other variant,* it is obvious that a collateral agreement between the purchasers is absolutely essential to provide for expenses of operation, taxes, repairs and maintenance and if the premises are subject to a mortgage, for payment of charges for interest and amortization—Section 6(b) (3) speaks of 'stock or other evidence of interest' and of a 'cooperative corporation or association.' Given a broad construction, we believe Section 6(b) (3) as it presently reads is comprehensive enough to cover any cooperative set-up where the necessity for a collateral agreement among the occupant-owners is apparent.

"It is not necessary that a purchaser of stock or other evidence of interest in a cooperative be entitled to a proprietary lease before Section 6(b) (3) would be applicable; it is sufficient if such owner is entitled by virtue of such ownership to *possession of a particular unit * * *.*" (Emphasis supplied).

As shown, supra, it is clear that the Declarations take the place of a collateral agreement for the operation and management of the apartment structures. It is obvious that in a situation like that presented in this case some form of cooperative organization must be formed by the tenants in common of a structure and premises owned and operated as it is contemplated these two structures will be. Without some such arrangement the living quarters would be without heat or water or any utilities. The roof and the walls could not be kept in repair. The halls could not be lighted, and the building would be without janitor service. The failure of the owner or owners of one or more of the apartments to pay his taxes would cast a burden upon the other purchasers.

That the experience of the Price Administrator and his regulations and interpretations were known and understood by the Congress when § 209(a) (2) of the 1948 Act was under consideration is shown by the Committee Reports and the debates in the Senate at that time. See Senate Report in the Housing and Rent Act of 1948 (No. 896, 80th Congress, 2d Session, pp. 12 and 13; and Vol. 94, No. 32 Cong. Record, p. 1517). See, also the Housing and Rent Act of 1949, approved March 30, 1949, amending the 1947 Act. Section 206 of the 1949 Act amending § 209 of the 1947 Act gives the Housing Expediter power whenever such action in his judgment is

necessary to "regulate or prohibit speculative or manipulative practices or renting or leasing practices (including practices relating to recovery of the possession) in connection with any controlled housing accommodations, which in his judgment are equivalent to or are likely to result in rent increases inconsistent with the purposes of this Act."

The court, we think, erred in denying an injunction and dismissing the complaint. Accordingly the judgment is reversed and the case remanded with instruction to grant an injunction.