**Robert ADAMS, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. No. 03280.**

United States District Court, D. Nebraska.

June 11, 1971.

James P. Costello, Omaha, Neb., for plaintiff.

John Mullenholz, Tax Div., Dept. of Justice, Washington, D. C., and Robert Becker, Asst. U. S. Atty., D. Neb., for defendant.

## MEMORANDUM

RICHARD E. ROBINSON, Chief Judge.

This matter comes before the Court after the trial of the action and its submission to this Court.

Respective counsel had requested a delay in a ruling in this matter in order to have transcript prepared and to submit briefs in accordance therewith. The transcript of the trial has been submitted to the Court and briefs have been requested of the parties by the Court and the time for their submission has long passed. The Court is now ready to render its decision and in so doing announce its findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

Jurisdiction for the suit is founded upon 28 U.S.C.A. 1340 and Section 7426 of the Internal Revenue Code of 1954.

On April 18, 1969, the defendant levied upon a bank account located in the First West Side Bank, Omaha, Nebraska, and as a result of this levy obtained $5,747.28. Said levy was pursuant to 26 U.S.C.A. § 6331.[1] This bank account was in the name of Ralph's Body Shop and was levied upon in order to satisfy a tax lien that had been levied against a business known as Ralph's Body Shop.

The tax liability for which the levy was made was for withholding and so-

---

1. This section provides in pertinent part:
"§ 6331. *Levy and distraint.*
[a] Authority of Secretary or delegate.—If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful for the Secretary or his delegate to collect such tax (and such further sum as shall be sufficient to cover the expenses of the levy) by levy upon all property and rights to property (except such property as is exempt under section 6334) belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official, of the United States, the District of Columbia, or any agency or instrumentality of the United States or the District of Columbia, by serving a notice of levy on the employer (as defined in section 3401 [d]) of such officer, employee, or elected official. If the Secretary or his delegate makes a finding that the collection of such tax is in jeopardy, notice and demand for immediate payment of such tax may be made by the Secretary or his delegate and, upon failure or refusal to pay such tax, collection thereof by levy shall be lawful without regard to the 10-day period provided in this section."

cial security taxes and unemployment insurance that was withheld from the Body Shop's employees but not remitted to the Government. The lien arose pursuant to 26 U.S.C.A. § 6321.[2]

Prior to this levy plaintiff and a Ralph Wolff [hereinafter Wolff] had entered into a business arrangement. In accordance with this agreement plaintiff provided Wolff with a shop in which Wolff carried on a body shop business. Plaintiff paid all expenses except for the wages of employees and the monies that were left over after these expenses were split between plaintiff and Wolff. Wolff was responsible for paying the wages of employees out of his percentage. Accordingly, it was the responsibility of Wolff to pay for the employees' taxes which were not remitted to the Government. Initially, the arrangement called for plaintiff to receive 30% of the monies left after expenses and Wolff to receive 70%. These percentages were periodically adjusted so that at the time of the levy plaintiff's cut was 15% and Wolff's was 85%.

The initial capital for this venture was put up by a Mr. Richard Rogers [hereinafter Rogers]. He was referred to at the trial as a "silent partner" of plaintiff. Rogers put up $1000.00 which was used to set up the business. Rogers and plaintiff had an agreement whereby they would split fifty-fifty the monies realized from plaintiff's percentage of profits from Ralph's Body Shop.

Wolff, in addition to being responsible for the hiring of all help was also the shop foreman. He used the same tax numbers for this business as he had previously used in a similar venture.

The business was in operation from June 19, 1967, until February of 1969. During this period of time the total profit credited to Adams and his partner Rogers was $6,911.42, or $3,455.76 each. Of this amount they withdrew a total of $1600–$800 apiece. The rest was allowed to remain with the First West Side Bank account for use in the business. Both plaintiff and Rogers reported on their 1968 federal income tax returns the $3,455.76 credited to them. Rogers, however, had another silent partner—his brother-in-law and thus Rogers reported one-half of his share of the Adams' percentage.

At the time of the levy there was $5,747.28 in the First West Side account. On the basis of the aforesaid, I have concluded that this sum levied on by the Government was not money of the deficient taxpayer, Ralph's Body Shop, but was the personal assets of the plaintiff, Robert Adams.[3] Adams held this amount on behalf of himself and his silent partner, Rogers.

I have further concluded that plaintiff and Ralph Wolff were partners in the business known as Ralph's Body Shop. In reaching this conclusion I have carefully examined the relationship between plaintiff and Wolff and have considered the many cases in this Circuit and in other courts in determining the tests used by courts in determining the existence of a partnership.

It has been frequently stated that the existence of a partnership is a matter of contract, and that no particular form of contract is necessary to create the entity known as a partnership. See James L. Robertson, 20 B.T.A. 112.

2. This section provides:
§ 6321. *Lien for taxes.*
If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount [including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto] shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

3. Thus plaintiff and Rogers withdrew a total of $1600 from the business. Plaintiff was credited with a total of $6911.42 for his percentage of profits. Thus $5311.42 was the personal assets of the plaintiff and $435.82 belonged to the business. However, on the basis of the business balance sheet and the day book, $435.82 would have also been distributed to the plaintiff as his share of the company's profits.

■ The statutory definition of a partnership has frequently been given. As far as it goes it is controlling, but, beyond it, one must look to general law. For tax purposes, local law is not controlling.[4]

■ Although no one test is controlling the tests that have been found indicative of the existence of a partnership are set forth in Volume 6 of Mertens, § 35.03 p. 21. Therein the tests are stated as follows:

1. Mutual interest in profits,

2. Mutual liability, joint and several, for debts and loss of capital,

3. Mutual agency and responsibility in the conduct of the business,

4. Common contribution and ownership of the partnership property,

5. The rendition of services by all partners,

6. The nonalienability of an interest in the business.

■ The plaintiff and Ralph Wolff had an agreement to share in the profits of the business. Also said men were mutually liable for the debts of the enterprise. Here the liability was several. Plaintiff was responsible for the rent of the building and for equipment and Wolff was liable for the wages of any employees of the venture. There was also mutual responsibility and rendition of services by plaintiff and Wolff in the conduct of the business. Plaintiff testified that he recruited business for several months and was paid by Wolff from monies from Wolff's percentage cut of the business. Plaintiff was responsible for collecting all monies for services rendered by the business. Further his purchasing of equipment and supplies was a dividing of the services. Wolff was responsible for all repairs performed in the shop. There was also common contribution to and ownership of partnership property. Wolff testified that he used his own mechanics tools in the business and as previously pointed, plaintiff furnished all supplies and equipment.

Wolff testified at trial that he believed he was in a partnership with the plaintiff.

During his examination by the Government Wolff testified as follows:

"Q. Did you consider yourself a partner with Bob Adams?

A. Yes.

Q. Why did you consider yourself a partner?

A. On a verbal agreement that we had made, and also introduced me to—

BY THE COURT: Let's get back to the verbal agreement. When and where and who was present, if anyone, other than you and Mr. Adams were present, when the agreement, if there was a verbal agreement, was made. About when. I don't mean the precise or exact date, but how it came about? Who was present? What conversation was had, and if you can remember what the substance of the conversation was, let's have it.

THE WITNESS: It was just a mutual agreement between the both of us.

BY THE COURT: What did he say and what did you say?

THE WITNESS: He asked me if I would like to go to work and run a shop, and I said yes, and he says okay, he had a place rented, so this is the way it went about, and there was only two in the conversation. That is all.

BY THE COURT: Very well. You may proceed."

4. *See* Wholesalers Adjustment Co. v. Commissioner, 88 F.2d 156 [8th Cir. 1937].

■ When plaintiff reported the income from this business on his 1968 tax return, he reported it as "undistributed share of profit" under the heading "INCOME OR LOSSES FROM PARTNERSHIP, ESTATES OR TRUSTS, ETC." I realize of course that this reporting of income as partnership profits is not controlling, but simply evidence of the intention of the parties. *See* Millender v. United States U.S.T.C. 61–1.

Further plaintiff carried the bank account upon which the Government levied in the name of Ralph's Body Shop. Here it is obvious to me that the plaintiff and Wolff set up a business venture, wherein plaintiff provided everything but labor, and provided for this expense by allowing Wolff a large percentage of the monies left over after paying for supplies, equipment and rent.

No doubt, the employees hired by Wolff looked to all the assets as security for payment of their salaries. If I were to hold that the arrangement here under consideration did not constitute a partnership then businessmen would be limited only by their imagination in setting up liability-free arrangements.[5]

It is now necessary to determine whether a lien filed against the property of a partnership is also a lien on the personal property of an individual partner and whether the Government may levy on said property. In Underwood v. United States, 118 F.2d 760 [5th Cir. 1941] the Government filed notices of tax liens for gasoline taxes owing by a partnership. The court held that the tax liens attached not only to the partnership property but attached also to the property individually owned by the partners.

■ Further, in American Surety Co. of N. Y. v. Sundberg, 58 Wash.2d 337, 363 P.2d 99 [S.C.Wash.1961] the court held that demand on a partnership was demand upon all of the partners and was sufficient compliance with 26 U.S.C. § 6321 for purposes of making taxes assessed a lien on property of individual partners. I have reached the same conclusion here and find that the demand made by the United States on the taxpayers Ralph's Body Shop was demand upon all the partners of that business and that a lien arose on the personal property of plaintiff when the deficiency was assessed. Accordingly, the levy made pursuant to 26 U.S.C.A. § 6331 was proper.

I am aware that one partner is not liable for the tax liability of another partner.[6] However, I have concluded that the tax liability that was owed was the joint responsibility of plaintiff and Wolff notwithstanding the involved arrangement that existed between said parties.

The foregoing shall constitute findings of fact and conclusions of law in accordance with Rule 52 of the Federal Rules of Civil Procedure.

In accordance with the views expressed herein [and Rule 58 of the Federal Rules of Civil Procedure] defendant will submit a proposed order of judgment within fifteen [15] days from the date of this Memorandum.

---

5. For instance, a grocery store could be set up so that A would provide the building and fixtures and would receive all income; B, for a percentage, would be responsible for the purchase of all supplies the store sold, and C, for a percentage, would be responsible for the employment of all help. If this arrangement was not considered a partnership, B could purchase a large quantity of goods on credit, stock the store and supervise their sale; A could receive all receipts and give B and C their percentages; if the percentages were insufficient to cover the cost of supplies and the wages of employees, said creditors would be powerless to proceed against A, who may have realized a substantial profit. *See* Adler v. Nicholas, 166 F.2d 674 [10th Cir. 1948].

6. Int.Rev.Code of 1954, § 701.