Ralph BOONE and Robert Boone, as Administrators C. T. A. of the Estate of Raymond Boone, Deceased, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. No. 4629.

United States District Court,
D. North Dakota,
Northeastern Division.

Dec. 27, 1973.

**116**

Garry A. Pearson, Grand Forks, N. D., for plaintiffs.

Harold O. Bullis, U. S. Atty., Fargo, N. D., for defendant.

## MEMORANDUM OF DECISION

BENSON, Chief Judge.

Plaintiffs, as Administrators C.T.A. of the Estate of Raymond Boone, deceased, have sued to recover $13,219.91 in federal income taxes paid by Raymond Boone (Decedent), for the years 1964 and 1965. The dispute arose over the method Decedent used in reporting a 1965 purchase of a seed potato futures contract, and Decedent's deductions, as expenses, of intangible drilling and development costs incurred in connection with an interest in certain oil well operations. The parties have stipulated the facts. The burden is on the plaintiffs. New Colonial Ice Co., Inc., v. Helvering, Commissioner of Internal Revenue, 292 U.S. 435, 54 S.Ct. 788, 78 L.Ed. 1348 (1934); Wells-Lee v. C.I.R., 360 F.2d 665 (8th Cir. 1966).

## POTATO FUTURES CONTRACT

The Decedent was an equal partner with his three brothers in a potato farming operation. In the fall of 1965, Decedent attempted to interest his partners in buying a potato futures contract to hedge the cost of the seed potatoes which would be required for the spring planting operations. The partners demurred, and the Decedent individually purchased a contract at a price of $13,387.50, on which he made a payment of $6,400.00. The contract was sold in March, 1966, at a loss of $304.00. The partnership acquired its seed potatoes from other sources. On his 1965 individual income tax return, the Decedent, on a cash basis, deducted from his individual share of partnership income, the futures contract price of $13,387.50 as an ordinary and necessary business expense, on the theory that the transaction was a hedge. The Internal Revenue Service (I.R.S.) treated the transaction as the purchase of a 26 U.S.C. § 1221 capital asset, and disallowed the deduction.

"A commodity future is a contract to purchase some fixed amount of a commodity at a future date for a fixed price". Corn Products Refining Co. v. C.I.R., 350 U.S. 46, 47, n. 1, 76 S.Ct. 20, 21, 100 L.Ed. 29 (1955).

There are three types of commodity exchanges when dealing in commodity futures.

(1) hedges—losses allowed in full.

(2) wagering contracts—losses allowed only to extent of gain thereon.

(3) legitimate capital investment—capital gains treatment of losses & gain. Futures are treated as capital asset. See C.I.R. v. Farmers & Ginners Cotton Oil Co., 120 F.2d 772 (5th Cir. 1941); 3B Mertens § 22.14 (1972).

"A hedge is regarded as a form of business insurance, directed to the factor of price of a commodity used in a business, and in its consequences is treated as an expenditure in the course of the business. . . . Losses from true hedges are allowable in full." 3B Mertens § 22.14 (1972).

■ To have a bona fide hedge, there must be: (1) a risk of loss by unfavorable changes in the prices of something *expected to be used or marketed in one's business*, (2) a possibility of shifting

such risks to someone else, through purchase or sale of futures contracts; and (3) an intention and attempt to shift the risk.

Taxpayer Boone's potato seed transaction was not a legitimate hedge because he was not dealing with "something expected to be used or marketed in one's business".

"A thread that runs through all of the cases is that there must be a direct relation between the product that is the basis of the taxpayer's business and the commodity futures in which he deals for protection . . . . Transactions relating to inventories which are an *integral part of taxpayer's business* do not result in the realization of capital gains or losses, even though the commodity involved appears to come within the literal wording of the definition of capital assets." 3B Mertens § 22.14 (1972) (emphasis added). *See Corn Products,* the controlling authority.

■ Taxpayer Boone, as an individual, was not engaged in potato dealing as a business. It was the partnership that bought, sold and raised potatoes. One must look to the taxpayer's business. Kaltreider v. C.I.R., 255 F.2d 833 (3rd Cir. 1958); Hollywood Baseball Ass'n. v. C.I.R., 423 F.2d 494 (9th Cir. 1970).

There is no evidence before this Court that the individual partners, by agreement, were required to furnish their share of the seed potatoes, and there is no evidence that the partners, by practice and custom ever individually furnished their share of seed potatoes. The seed potato expense was a partnership expense and not allowable as a deduction on the individual income tax return of a partner. *See* Wilson v. United States, 376 F.2d 280, 179 Ct.Cl. 725 (1967).

The Court concludes that the Decedent's potato futures contract transaction was on his own behalf and not for the account of the partnership, and therefore no part of it was deductible on the Decedent's 1965 income tax return.

*See* Faroll v. Jarecki, 231 F.2d 281 (7th Cir. 1956).

## INTANGIBLE DRILLING AND DEVELOPMENT COSTS

During the calendar years 1964 and 1965, Decedent invested in several oil well ventures. The investments were made as a result of a long time friendship with a Donald Davis of Poneto, Indiana. Mr. Davis convinced Decedent and several other investors to help develop several oil well properties. Decedent never knew the names or addresses of the other investors. The venture was put together entirely by Davis, without divulging the identity of the other investors to one another. Decedent invested in four wells.

The wells were designated as Davis #1, Davis #2, in which Decedent invested in 1964, and J. D. Clark #1 and Lattas-Harrison, in which Decedent invested in 1965.

The dispute between I.R.S. and Decedent arose when I.R.S. disallowed Decedent's deduction of intangible drilling and development costs as expenses.

26 U.S.C. § 263(c) directs the promulgation of regulations granting an option to deduct as expenses intangible drilling and development costs in the case of oil and gas wells. 26 C.F.R. § 1.612–4 provides:

"(a) *Option with respect to intangible drilling and development costs.* In accordance with the provisions of § 263(a), intangible drilling and development costs incurred by an operator (one who holds a working or operating interest in any tract or parcel of land either as a fee owner or under a lease or any other form of contract granting working or operating rights) in the development of oil and gas properties may at his option be chargeable to capital or to expense."

■ The Decedent claimed the option provided in 26 C.F.R. § 1.612–4(a). The

I.R.S. denied it, contending the relationship between Decedent, Davis, and other investors created a partnership; that only the partnership was entitled to elect the option and the individual may not elect even where no election was made by the partnership.

26 U.S.C. § 703 provides:

"(b) Election of Partnership; Any election affecting the computation of taxable income derived from a partnership shall be made by the partnership, . . ."

The Decedent contends a partnership was never created, and he was entitled to individually elect and deduct such expenses. He further contends that even if a partnership was formed, he was entitled to exercise the § 1.612-4(a) option where the partnership failed to elect.

Decedent cites Goodall v. Commissioner of Internal Revenue, 391 F.2d 775 (8th Cir. 1968), cert. den., 393 U.S. 829, 89 S.Ct. 96, 21 L.Ed.2d 100, as authority for the right of individual elections inconsistent with partnership elections regarding intangible drilling expenses. Goodall cannot be so broadly read, for it specifically concluded that the individual partner's election was *consistent* with the partnership return and that, therefore, the taxpayer was entitled to expense such costs. Goodall deals with partnership returns which, in technical form, did not meet I.R.S. requirements. The following language is pertinent:

"The very evidence which supports the conclusion that costs of this kind were incurred in 1949 demonstrates, without controversy, that Mr. Goodall intended that the costs be expensed rather than capitalized. . . ."

"There is nothing in any of the partnership returns indicative of a contrary intent. Intangible drilling costs were clearly and consistently asserted as deductions in 1950 and succeeding years and the only 1949 item, resembling that description, although unrelated, was also asserted as a deduction. Nothing of this kind was ever given a capital character on any of the returns."

"The partnership records are equally consistent. The costs were always expensed and not capitalized."

"There is an *acceptable explanation* for the failure of the 1949 costs to find their way into the partnership return for that year." at 804, 805 (emphasis added).

The Eighth Circuit in Goodall asserted "that the partnership election is controlling irrespective of any election made by the individuals with respect to their independent operations." at 802, citing Bentex Oil Corp., 20 T.C. 565 (1953).

Goodall is consistent with the rule that, if a partnership exists under the Codes, an election to expense intangible drilling development costs must be made by the partnership. As such, a failure to elect by the partnership precludes an election by individual members. 26 U.S.C. § 703(b). 26 C.F.R. § 1.703-1(b) states the general rule concerning the elections of the partnership as follows:

"Any elections . . . affecting the computation of income derived from a partnership shall be made by the partnership. For example, . . . the option to deduct as expenses intangible drilling and development costs shall be made by the partnership and not by the partners separately." (emphasis added). *See also* Morburger v. United States, 303 F. Supp. 42 (W.D.Ky.1969); 4 Mertens §§ 24.48c, 24.58b; 6 Mertens § 35.-28.

The Third Circuit recently explained the rationale underlying the general rule in Demirjian v. Commissioner of Internal Revenue, 457 F.2d 1 (3rd Cir. 1972):

"Section 703(b) provides, with exceptions not relevant here, that any election which effects the computation of taxable income derived from a partnership must be made by the partnership. The election for nonrecognition

of gain on the involuntary conversion of property would affect such computation and is the type of election contemplated by § 703(b). The partnership provisions of the Internal Revenue Code treat a partnership as an aggregate of its members for purposes of taxing profits to the individual members and as an entity for purposes of computing and reporting income. In light of this entity approach to reporting income, Congress included § 703(b) to avoid the possible confusion which might result if each partner were to determine partnership income separately only on his own return for his own purposes. To avoid the possible confusion which could result from separate elections under § 1033(a), the election must be made by the partnership as an entity, and the failure of the partnership to so act results in the recognition of the gain on the sale of partnership property." at 5, 6.

The question that remains is whether a partnership existed. The term "partnership" has never been defined with any specificity in the Code or in the revenue acts. For example, the Code defines "partnership" as including:

". . . a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a corporation or a trust or estate." 26 U.S.C. §§ 761(a), 7701 (a)(2).

Because of the vagueness of the Code in this respect, the rules of law to be applied in determining whether a partnership does or does not exist are in confusion. Factually, the existence of a partnership is often problematical and difficult to determine. The wording of the Code, it has been said, "was intended primarily to provide a more definite category for syndicates, and for organizations similar to them, to pools, and to joint ventures, the taxation of the income of which had proved troublesome." 6 Mertens § 35.02.

Examining the relationship of Decedent and his co-investors, the following picture is presented. In 1964 and 1965, Decedent purchased fractional interests in various oil wells in Indiana and Michigan. The purpose of the investments was to develop the wells and derive profits from the sale of oil produced therefrom to gas and oil companies, which delivered checks to each investor individually. Since Mr. Davis was a long time friend, Decedent placed great trust in him in these transactions. As such, the agreement between Decedent and Davis was casual and apparently oral. No records relating to costs were supplied Decedent, and he was unaware of the identity of other investors in these ventures. No control over the management of the wells was exercised by Decedent, except that on two occasions Davis requested Decedent to put more money into the wells to purchase bigger pumps. This prompted Decedent to sell out. Decedent's representatives insist he never intended to form a partnership, except that, it is stipulated, a partnership election was apparently made as to the J. D. Clark well. The I.R.S. examined the records kept by Davis and made its determinations based on those records. The records are not included in the stipulated evidence before the Court.

Some tests that have been used to detemine whether a partnership exists under common law or state law are:

1. Mutual interest in profits.

2. Mutual liability, joint and several, for debts and loss of capital.

3. Mutual agency and responsibility in the conduct of business.

4. Common contribution and ownership of the partnership property.

5. The rendition of services by all partners.

6. The nonalienability of an interest in the business.

Adams v. United States, 328 F.Supp. 228, 231 (D.Neb.1971) ; 6 Mertens § 35.-03. Whatever may be the requirements of common law or the various states as to what constitutes a partnership under the above tests, it is clear that for federal income tax purposes these common law or local requirements are not controlling. Thompson v. Riggs, 175 F.2d 81 (8th Cir. 1949) ; Wholesalers Adjustment Co. v. Commissioner, 88 F.2d 156 (8th Cir. 1937) ; Burde v. Commissioner of Internal Revenue, 352 F.2d 995 (2nd Cir. 1965) ; Haley v. Commissioner of Internal Revenue, 203 F.2d 815 (5th Cir. 1953) ; Adams v. United States, 328 F. Supp. 228 (D.Neb.1971). "The term 'partnership' is broader in scope than the common law meaning of partnership, and may include groups not commonly called partnerships." 26 C.F.R. § 1.-761–1. *See also* Demirjian v. C.I.R., 457 F.2d 1 (3rd Cir. 1972). Since the statutory definition of partnership under the Code is so broad, an agreement, even if oral and casual, may constitute a partnership. Ayrton Metal Co., Inc. v. Commissioner, 299 F.2d 741 (2nd Cir. 1962).

It has been stated that whether a partnership exists is basically a question of the intention of the parties, and that the determination of this intent requires an examination into all of the surrounding circumstances. Smith's Estate v. Commissioner of Internal Revenue, 313 F.2d 724 (8th Cir. 1963) ; Thompson v. Riggs, 175 F.2d 81 (8th Cir. 1949) ; Burde v. Commissioner of Internal Revenue, 352 F.2d 995 (2nd Cir. 1965) ; Teitelbaum v. Commissioner of Internal Revenue, 346 F.2d 266 (7th Cir. 1965). It must be stressed, however, that no one test is controlling, nor is the lack of any one element fatal. For example, "[t]he mere fact that [a partner] did not actively participate in the business does not preclude the possibility of a bona fide intent to [carry on] a [present] partnership". Levin v. Commissioner of Internal Revenue, 199 F.2d 692, 694 (2nd Cir. 1952). "Although some of the factors often found relevant to the existence of a [partnership], such as joint bank accounts, filing of partnership returns, an agreement to share losses, are not present in this case, no single factor is controlling." Burde v. C.I.R., 352 F.2d 995, 1002 (2nd Cir. 1965). Nor is a particular form of contract necessary. Adams v. United States, 328 F. Supp. 228 (D.Neb.1971).

■ Decedent's relationship with Davis and other investors on each of the wells appears to come within the term "joint venture", as that term is defined and examined by the Eighth Circuit in Smith's Estate v. Commissioner of Internal Revenue, 313 F.2d 724 (8th Cir. 1963) ; *See also Burde; Ayrton*; Haley v. Commissioner of Internal Revenue, 203 F.2d 815 (5th Cir. 1953) ; Kleinschmidt v. United States, 146 F.Supp. 253 (D.Mass.1956). Noting that a joint venture is, by statute, a form of partnership, the Eighth Circuit stated that the question to be answered is "whether the partners really and truly intended to join together for the purpose of carrying on a business and sharing in profits or losses or both. . . .", Smith's Estate, 313 F.2d at 729, citing Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670 (1948). The Court continued, " 'The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts . . . the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise.' " 313 F.2d at 729, citing Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659 (1948). It would seem that the best definition of joint venture, in view of the broad scope of § 761, is noted in *Haley*, 203 F.2d at 818:

"[A] 'special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.' "

The Court concludes the Decedent taxpayer engaged in joint ventures for the purpose of acquiring and developing oil wells to derive a profit therefrom, and that these joint ventures constituted a partnership for tax purposes. *See* Bentex Oil Corp., 20 T.C. 565 (1953). The plaintiffs have not carried the burden of establishing the Decedent's right to exercise the option to expense the intangible drilling and developing costs disallowed by the Commissioner on the Decedent's 1964 and 1965 individual income tax returns, and the Commissioner's determination must stand.

Pursuant to the stipulation filed with the Court by the parties, the Defendant, as the prevailing party, is directed to submit to the Court a proposed judgment to be entered in the case, consistent with the.decision herein.