WOODS, Housing Expediter, v. KRIZAN et al.

No. 2794.

United States District Court
D. Minnesota.
Fourth Division.
Aug. 25, 1948.

Patrick J. O'Connor, Litigation Atty., of Chicago, Ill., and Alex Dim, Chief Area Rent Atty., of Minneapolis, Minn., for plaintiff.

George Beaverson, of Minneapolis, Minn., for defendant Henry G. Henderson.

T. H. Herman, of Minneapolis, Minn., for remaining defendants with exception of Irene E. Krizan.

Daniel Krizan, pro se.

NORDBYE, Chief Judge.

The above-entitled cause came before the Court on plaintiff's notice of motion for a preliminary injunction enjoining the defendants, their agents, servants, employees, and all persons in active concert or participation with them, pending the final hearing and determination of this cause, from

"(a) Removing or evicting, or attempting to remove or evict, any tenant of the housing accommodations in the premises alleged in the complaint, upon any ground or for any purpose not expressly permitted by the Housing and Rent Act of 1947, as amended, or as hereafter amended, extended or superseded in such cases made and provided.

"(b) Engaging in any action or course of action, the purpose of which is to evict illegally tenants from the premises alleged in the complaint or any other housing accommodations owned, controlled or managed by the defendants, or each of them, or from evicting said tenants in any form or manner, contrary to the Housing and Rent Act of 1947, as amended [50 U.S.C.A. Appendix, § 1881 et seq.] and the Regulations issued thereunder, as heretofore or hereafter amended or superseded.

"(c) Committing any violation of the above Act or the Regulations issued thereunder, as heretofore or hereafter amended, extended or superseded."

The grounds urged in support of the motion were that "the defendants have engaged, are engaging, or are about to engage, in acts and practices which constitute a violation of Title II of the Housing and Rent Act of 1947, as amended, in that the defendants have taken steps to evict and will evict tenants living in housing accommodations located at 1500 Park Avenue, Minneapolis, Minnestota, contrary to and in violation of Section 209(a) (2) of the Act."

The matter was presented on the verified complaint, and testimony was offered and received in behalf of the plaintiff and defendants. It appears from the testimony that Daniel Krizan, one of the defendants, was the owner of the premises at 1500 Park Avenue, a twenty-one apartment building in this city, and that, through a real estate agent, he inserted advertisements offering the place for sale on a group purchase. Some of the advertisements referred to the offer as a "Co-op" sale. The purchase price was the sum of $130,000,

payable $18,900 at the time of the execution of the agreement and the balance to be paid in monthly installments of $735 each to be paid on the first day of each and every month commencing June 1, 1948, until the balance of the purchase price with interest at the rate of 5% per annum shall have been paid in full. The contract for deed had the usual covenants regarding insurance and cancellation and, in addition, the real estate covered certain personal property which was located in the various apartments.

The scheme of the sale was substantially as follows: The real estate firm canvassed the various tenants in the building and informed them that they could purchase on this group plan and the offer was that each individual purchaser should pay $900 down and $55 per month. Of the $55, $35 apparently was payment on the contract for deed and $20 was to be the purchaser's share of the upkeep of the property. Some twenty-one purchasers paid the necessary down payment and a contract for deed was entered into between the seller and the twenty-one purchasers. Apparently the apartments were allocated to the various purchasers on a "first come, first choice" basis. It does not appear that these purchasers had any arrangement among themselves as to how this deal was to be handled, or that any plans had been made looking to the manner in which they should work out some plan or scheme to handle the property on this basis. After the contract for deed was entered into, the various purchasers who had not obtained possession of the apartments assigned to them under this plan signed notices of eviction on the tenants in possession, and the attempt to evict the tenants precipitated this motion on the part of the Housing Expediter to enjoin the defendants from taking any action to evict the tenants, in that it is plaintiff's position that, under the Housing and Rent Act of 1947, as amended, any eviction would be in violation of Section 209(a) (2) of the Act, which governs the right of a landlord to maintain an action to recover possession of any controlled housing accommodations. The section of the Act relied upon by plaintiff reads as follows:

"Sec. 209. (a) No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless—

\* \* \* \* \* \*

"(2) the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations, or for the immediate and personal use and occupancy as housing accommodations by a member or members of his immediate family, or, in the case of a landlord which is an organization exempt from taxation under section 101(6) of the Internal Revenue Code, or the immediate and personal use and occupancy as housing accommodations of members of its staff: Provided, That in the case of housing accommodations in a structure or premises owned or leased by a cooperative corporation or association no action or proceeding under this paragraph or paragraph (3) to recover possession of any such housing accommodations shall be maintained unless stock in the cooperative corporation or association has been purchased by persons who are then stockholder tenants in occupancy of at least 65 per centum of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises; but this proviso shall not apply where such corporation or association acquires or leases such structure or premises after the effective date of the Housing and Rent Act of 1948 pursuant to a contract entered into prior to such date."

Plaintiff contends that these purchasers are in effect a cooperative corporation or association and come within the prohibition of the above section as to eviction because the purchasers do not constitute sixty-five per cent of the tenants in occupancy.

It is apparent from the evidence that these twenty-one persons named as vendees

in the contract for deed acted in good faith and assumed that they were buying these premises so that they could obtain housing accommodations for themselves without conflict with the Housing and Rent Act. They did not combine together to evade the Housing Act, nor did they adopt this method to purchase the building in an attempt to evade the so-called cooperative group or association provisions of the Act. Moreover, the evidence will not warrant a finding that they have any intention of forming a cooperative group or association as the means of operating their property, and one cannot find that they constitute a de facto cooperative group or association. As owners of the building as tenants in common, they undoubtedly assumed that they could enter into a mutual agreement with respect to the operation of the building, with a building manager in charge. In fact, they have held some meetings with this object in mind. They employed an attorney to examine the title to the property and he drew up a proposed operating agreement for them to consider. Obviously, the difficulties which may beset any such venture are many when it is to be gathered that most of the purchasers are without any experience in the problems of building management. But, regardless of the apparent lack of any definite plan as to how the twenty-one tenants in common are to carry out this venture successfully, I am confronted with a situation where some twenty-one people have invested in good faith over $18,000 in an apartment building. Three of the investors were tenants in occupancy, and since the purchase a total of twelve apartments have become available for the purchasers by reason of former tenants vacating, so there will be approximately 57 per cent of the building units occupied by tenants in common.

 The fact that cooperative methods must be used by these purchasers if they are to make a success of their venture does not make them a de facto cooperative corporation or association. It seems clear that, by the section upon which plaintiff relies, Congress had in mind a cooperative group or association taking a deed or lease to a property, not a group of persons who might have to cooperate with one another

in order to make their venture workable. The language in the Act is explicit: "Provided, That in the case of housing accommodations in a structure or premises owned or leased by a cooperative corporation or association." Whether an organization is termed a cooperative group or a cooperative association, the legal entity contemplated by Congress was one which issued stock. The tenants' rights to proprietary leases are based upon the stock they own in the cooperative group or association. Under such arrangement, the owners of the stock are not the landlords, but the corporation or association is the one who rents the property. In the instant situation, the landlord of the tenants who are now sought to be evicted is not a cooperative group or association, as the Act contemplates, by reason of the language used, but the individuals who are the named vendees in the contract for deed are in reality the landlords, in that they now have equitable title to this property and are therefore authorized to collect rents from those in possession. In other words, they occupy the same relationship to the tenants sought to be evicted as if the vendor had sold the property to one or two individuals rather than to twenty-one individuals. If a single purchaser desired the possession of an apartment for his immediate personal use and occupancy as housing accommodations, no doubt there would be authority for such eviction. What, then, is the essential difference in construing the rights as between one purchaser or a dozen who in good faith may have purchased any particular building which affords housing accommodations? The purchase of property by tenants in common is a perfectly legal way to hold property in this State. But it is urged by the plaintiff that such a construction will lead to abuses and circumvention of the intent of the Act. However, if such methods of purchasing and holding property are inconsistent with the objects of the Act, Congress has not restricted a landlord's right in good faith to possession of housing accommodations for his immediate use or for members of his immediate family, except where the landlord is a cooperative group or association and the tenants have a proprietary lease by reason

of stock membership. Congress could have undoubtedly provided for the present contingency by requiring that, in a purchase of this kind, at least sixty-five per cent of the dwelling units be purchased by tenants in occupancy before such group purchasers would have a right to evict the non-purchasing tenants. But, obviously, I have no right to legislate where Congress has failed to do so. To assume that Congress intended the so-called cooperative association provisions to apply to a situation such as we have in the case at bar is to read into the Act an intent that cannot be inferred from any language Congress saw fit to use.

It seems clear that I would be indulging in speculation and conjecture as to Congressional intent if I adopted the interpretation advanced by the plaintiff. Assume, for instance, that four people purchased a four-plex and agreed among themselves as to the method of allocating the dwelling accommodations and their respective contributions to the expense of the operations. Certainly, it could not be urged that, merely because four purchasers became landlords of the occupying tenants, they could not obtain possession of their apartments for their own living purposes on the theory that they constituted some sort of a cooperative group or association within the meaning of the Housing Act. And, in this connection, reference may be made to a recent decision of Judge Harold N. Rogers of the Municipal Court of the City of Minneapolis in the case of Rose Mariana Swanson v. Ralph Finman, in which he upheld the right of one of the purchasers to evict in a situation comparable to this. The only difference between four purchasers and twenty-one purchasers is to be found in the difficulties which will confront twenty-one purchasers in endeavoring to operate their building successfully on a so-called Utopian basis. It may be argued that they necessarily will have to form an organization on a cooperative plan in the future in order to manage their building successfully. But I cannot find on the record before me that they intend to do so, or that they had such plan in mind when they purchased the property. I doubt that I have any right to adjudge their present rights upon any supposition as to their status in the future.

I am entirely aware of the racket which may result in the sale of property to a group of people who are desperate for housing accommodations. Concededly, they are apt to use poor judgment in making their investment and are easy prey to sellers who assume they cannot make any profit when rent control is in effect and desire to take advantage of an inflated real estate market and thereby dispose of their holdings. But if there does develop a so-called "contract for deed" racket, legislation should, if possible, correct it. The Court should not enunciate an untenable statutory construction in an attempt to correct the evil.

In passing, I might point out the equities of the situation where an application for a temporary injunction is being sought. These defendants, as I have already indicated, have paid out in good faith some $18,000 for this apartment building. Twelve of the apartments are already available for them. There are nine tenants who would be affected by eviction proceedings. If I should grant an injunction, the dilemma confronting, and substantial prejudice to, the purchasers who have not as yet obtained any living accommodations in the apartments for which they paid substantial sums, is apparent. However, as to the right that any one of the tenants in common may have in eviction proceedings under the Act against any particular tenant is a matter that I do not pass upon. That is a matter for the Municipal Court when and if the eviction proceedings come before it. But I am satisfied that, on this showing, I would not be justified in granting an injunction such as the plaintiff now prays for. The recital of facts incorporated in the foregoing may be considered as my findings of fact, and as a conclusion of law, that the motion for a preliminary injunction be in all things denied. It is so ordered.

An exception is allowed to the plaintiff.