WOODS, Housing Expediter, v.
KRIZAN et al.

No. 13901.

United States Court of Appeals
Eighth Circuit.

Aug. 11, 1949.

William A. Moran, Special Litigation Attorney, Office of Housing Expediter, Washington, D. C. (Ed Dupree, General Counsel, Hugo V. Prucha, Assistant General Counsel, and Louise McCarthy, Special Litigation Attorney, Office of Housing Expediter, Washington, D. C. with him on the brief) for appellant.

Theodor Herman, Minneapolis, Minn. (George Beaverson and Sheldon J. Gensler, Minneapolis, Minn., with him on the brief) for appellees.

Before SANBORN, WOODROUGH, and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

Would the acquiring and operating of an apartment building, of 21 dwelling units, by a group of 21 individuals, for their own occupancy, under a tenancy in common, necessarily involve such an inherent cooperative undertaking and organization as would make the situation subject to the proviso of 62 Stat. 93, ch. 161, § 204(a), 50 U.S.C.A.Appendix § 1899(a) (2), of the Housing and Rent Act of 1948, "That in the case of housing accommodations in a structure or premises owned or leased by a cooperative corporation or association no action or proceeding [under paragraph 2 of this statutory section, allowing recovery for a housing use by the landlord himself or by a member of his immediate family, or under paragraph 3, allowing recovery for a purchaser's housing use in case of a sale in good faith under a written contract] to recover possession of any such housing accommodations shall be maintained unless stock in the cooperative corporation or association has been purchased by persons who are then stockholder tenants in occupancy of at least 65 per centum of the dwelling units in the structure or premises and are entitled by reason of stock ownership to proprietary leases of dwelling units in the structure or premises?"

The question arises in a suit by the Housing Expediter, under section 206(b) of the Housing and Rent Act of 1947, as amended, 61 Stat. 199, 62 Stat. 98, 50 U.S.C.A.Appendix, § 1896(b), for an injunction against the vendor of the apartment building involved, his real estate agent, the vendees, and the temporary agent appointed by the vendees to look after the initial problems connected with their ownership and operation of the building. The building was located in the Minneapolis-St. Paul defense-rental area, 12 F.R. 4331. Each vendee, under the joint contract of purchase, was to have an undivided 1/21 interest in the property. Only three of the tenants of the 21 apartments in the building became contract purchasers. The other 18 purchasers were outsiders and strangers to each other, who apparently were seeking housing accommodations. Under the direction and guidance of the vendor and his agent, the purchasing group, through their temporary agent, served eviction notices upon all the non-purchasing tenants, declaring that possession of the property was desired for occupancy by the purchasing group and with the intention of withdrawing all of the apartments from the rental market. The contract of purchase contained a provision that the vendees should be entitled to possession of the premises by a certain date, but the vendor, in the eviction notices which he prepared, apparently chose to have the demand for possession made in the name of the purchasers rather than in his own.

The object of the Housing Expediter's suit, as set forth in the prayer of his complaint, was (a) to prevent the vendor, his agent, the vendees, and their agent from taking further steps to attempt to oust the non-purchasing tenants from the premises; (b) to prevent any of the parties, if they made use of such a selling or holding scheme in relation to any other property, from attempting to evict the tenants of such other property, unless the 65 per cent requirement of the proviso of 50 U.S.C.A. Appendix, § 1899(a) (2) had first been met; and (3) to enjoin each of the parties also generally from violating the Housing and Rent Act in any other respect.

The trial court on a hearing denied the Housing Expediter's request for a perma-

nent injunction, D.C., 81 F.Supp. 121, and the Housing Expediter has appealed. It was the court's view that, while the purchase, occupancy and operation of the apartment building by the 21 tenants in common might involve a form of cooperative ownership and undertaking, the tenants in common could not by reason of that fact alone be said to constitute a cooperative corporation or association within the meaning of the proviso of 50 U.S.C.A.Appendix, § 1899(a) (2), set out above; that the proviso was not intended to have application to any direct ownership and attempted occupancy of housing property by the members of a group holding title as tenants in common, even though they would have to resort to cooperative methods "to make their venture workable;" and that the 65 per cent requirement of the statutory proviso therefore should be held to apply only to an entity "which issues stock" and whose shareholders' rights to occupancy of the property depend upon proprietary leases "based upon the stock they own."

The trial court's disposition was made prior to our decision in Woods v. Petchell, 8 Cir., 175 F.2d 202, 204. That case involved a similar scheme of selling apartment-house property and evicting the occupants under a tenancy-in-common purchase, with the unimportant variation that it was further attempted there to sell each purchaser separately, as personal property, in addition to his undivided interest in the land and building structure, the inner portion or room space of a specific apartment, "together with the floors, the inner surface of the walls and ceilings including the lath and plastering, partitions, doors, windows, trim, decorations, heating, lighting and water supply apparatus, and other parts wholly within the private apartment."

We held that the trial court had erred in that case in denying the Housing Expediter's request for an injunction and said, "It is obvious that in a situation like that presented in this case some form of cooperative organization must be formed by the tenants in common of a structure and premises owned and operated as it is contemplated these two structures [of six units each] will be." 175 F.2d at page 208. The

inherent problems and inescapable incidents involved in a group undertaking and occupancy of this character, as our opinion pointed out, such as structural repairs, operation of central heating plant, maintaining of general plumbing, regulating garbage accumulations, allotment of storage-space, care of sidewalks, hall-and-stairway lighting and cleaning, upkeep of taxes, insurance coverage, payment of contract or mortgage instalments, and the other variable elements implicit in the purchasers' mutual rights necessarily would require some cooperative set-up and system for dealing with their occupancy of the property.

Congress, in the enactment of the statutory proviso, as its committee hearings disclose, was attempting to reach out against the "cooperative housing racket," which the omission from the Housing and Rent Act of 1947 of the control provided by the expired Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 901 et seq., and its implementing regulations, had left with an open field. The scope of the developed "racket" was fully before Congress. See Hearings before a Sub-Committee of the Committee on Banking and Currency, U. S. Senate, 80th Congress, 2nd Session, on S.1741, S.2001, S.2014. In the light of the revived problem and the method of dealing with it which had been found necessary under the previous Emergency Price Control Act and its implementing regulations, we were of the opinion in the Petchell case that Congress intended that the terms "cooperative" and "association," in the proviso of 50 U.S.C.A. Appendix, § 1899(a) (2), should have the broad and popular meaning which they had been given under the Emergency Price Control Act, and not a restrictive and technical refinement significant only to those with special training or knowledge. A laying of hands only upon duly organized cooperative corporations which had stockholders and issued proprietary leases to its shareholders would have left uncurbed the evictions occurring in the general cooperative field, for it would have meant that a variation, such as here, simply would be made in the form of the cooper-

ative undertaking and set-up in order to enable the eviction of apartment-house tenants to go on as before.

And so it was our view that a reading of the proviso of 50 U.S.C.A.Appendix, § 1899(a) (2) as covering any form of co-operative set-up in a housing accommodation of substantial proportion, under a tenancy-in-common purchase, where the necessity for a collateral organizational or functioning agreement among the purchasers was apparent if they were to be able to carry on their undertaking, was "the only interpretation consistent with the intent and purpose of Congress." This interpretation seemed to us to be fortified also by the fact, as we pointed out, that the language of the proviso followed closely the language previously used in subsection 6(b) (3) of the Rent Regulation for Housing, 10 F.R. 1973, 11 F.R. 8106, promulgated under the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 901 et seq., which language in the regulation had by administrative interpretation been given the significance which we were according that of the statutory proviso. Under these circumstances we regarded the language of the proviso as having been intended to have related significance to the treatment of the problem by the regulation under the Price Control Act, in view of Congress's undoubted familiarity with the regulation, with the experience under it, and with the interpretation which it had been given. Cf. Tudor Arms Apartments v. Shaffer, Md., 62 A.2d 346, 350.

Our opinion further pointed out that the organizational scheme involved in the Petchell case provided a sufficient legal substitute or equivalent for "stock," "stock-holder," "stock ownership," "proprietary leases," etc., so as not to make those terms meaningless in the statute, and sufficient structural elements to give formal content also to the term "association." This equally is true of the situation in the present case, as a matter of natural inherence in the set-up necessary to carry on the purported undertaking, as well as from the recognition made of this fact by the members of the group in the meetings held by them prior to the Housing Expediter's suit and the steps which they had taken to have a formal agreement drawn. That the suit prompted them to defer action upon the formulation and adoption of such a written agreement during the litigation can hardly affect the implicit realities of the matter, nor has the situation been one where they have been without a cooperative association in fact, under the tentative actions taken at their group meetings and their appointment of a temporary managing agent.

The Petchell case is controlling of the situation here, and there is no need to discuss further the questions there resolved. The decree of the trial court must accordingly be reversed and the case remanded.

Appellees argue that any error in the trial court's interpretation of the proviso would still not entitle the Housing Expediter to an injunction, because more than 65 per cent of the purchasers have now become occupants of the building. Apparently the tenants have been moving out of their apartments while the controversy has been pending, and only two of them now remain. But the eviction notices which had been served upon these two tenants before the 65 per cent condition of the proviso had been met were not effective to terminate their rights of occupancy, and they would be entitled to be protected against the taking of any steps to evict them on the basis of these notices. What may be the right of the association now to terminate their tenancies under new notices is not a question that is before us on the present appeal.

The scope of such decree as may be appropriate is a matter for the sound judgment of the trial court when the case is remanded, having proper regard for the public interest that is involved under the statute, and not alone for the private equities of the individuals who may be affected thereby. Cf. Hecht Co. v. Bowles, 321 U.S. 321, 330, 331, 64 S.Ct. 587, 592, 88 L.Ed. 754. Besides dealing with the rights of the two remaining tenants, an opportunity will perhaps be afforded to consider also, whether there have been such activities by the vendor and his real estate agent or by either of them in selling other apartment

properties under a similar scheme, accompanied by evictions or eviction attempts, as to warrant an injunction against the threat thereof in further sales where the 65 per cent provision of 50 U.S.C.A.Appendix, § 1899(a) (2) has not been met. The record contains an indication that the real estate agent has been specializing in this form of promotional activity, but the evidence is undeveloped as to whether these previous situations have been ones where the 65 per cent requirement for evictions has or has not been met.

■ Appellees have further argued that if the 65 per cent requirement of the proviso made the eviction notices ineffective for purposes of paragraph 2 of 50 U.S.C.A. Appendix § 1899(a), relating to a recovery of possession for occupancy by the landlord or the members of his immediate family, the notices were nevertheless valid for purposes of paragraph 5 of the subsection, covering the right of eviction in order to withdraw the property from the rental market. But admittedly there was no intention here to terminate the use of the property for housing-accommodation purposes. Besides, the recitation in the notice that it was the intention to withdraw the property from the rental market would in any event have been nullified, as a basis for further evictions on the basis thereof, by its demonstrated lack of continued integrity, from the fact appearing in the evidence that one of the apartments in the building has since been rented to some other tenants. The notices served did not purport to be withdrawals of specific apartments but to be a general withdrawal of "all of the apartments in said building from the rental market."

The Housing Expediter suggests here that the situation is one in which a mandatory injunction should be issued to restore the status of the tenants who have vacated their apartments since the suit was instituted. The present record, however, does not enable us to pass upon that question, for there is nothing to show whether the tenants who have moved out have done so voluntarily and without compulsion from the eviction notices served or to indicate what their present situation may be. The trial court found that the members of the purchasing group had acted in absolute good faith, and they were therefore simply the innocent victims of a property owner's and real estate agent's promotional scheme. All these factors, weighed in proper relation to public interest under the statute, might be valid elements of consideration on the question of whether a mandatory injunction would serve any useful purpose or whether it would be equitable on the whole situation.

Reversed and remanded.