## BARTHOLOMEW et al. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 14209.

United States Court of Appeals
Eighth Circuit.

Jan. 23, 1951.

Johnsen, Circuit Judge, dissented.

Chase Morsey, St. Louis, Mo., for petitioners.

I. Henry Kutz, Sp. Asst. to the Atty. Gen. (Theron Lamar Caudle, Asst. Atty. Gen. and Ellis N. Slack, Robert N. Anderson and Louise Foster, Sp. Assts. to the Atty. Gen., were on the brief), for respondent.

Before SANBORN, JOHNSEN, and RIDDICK, Circuit Judges.

SANBORN, Circuit Judge.

This petition challenges the correctness of a decision of the Tax Court determining a deficiency in income tax of each of the petitioners for the calendar year 1944. The petitioners assert that the deficiencies result from the erroneous inclusion in the 1944 income of Harland Bartholomew & Associates, a partnership, of an item of $23,000 which accrued in 1943.

The partnership consists of the petitioners. Its principal office is in St. Louis, Missouri. Its business is engineering and city planning. Its books of account in St. Louis have been kept, and its income tax returns made, on a cash receipts and disbursements basis.

In 1942 the Federal Works Agency, on behalf of the United States, employed the partnership as "Architect-Engineer", to perform specified planning and engineering services in connection with the construction of dwelling units as a part of a Defense Housing Project located at Norfolk-Portsmouth, Virginia, known as the

"Norfolk-Portsmouth project." The contract under which the work was done was dated January 5, 1942, and was executed February 26, 1942, by "Harland Bartholomew & Associates, by Harland Bartholomew, Partner, 317 N. 11th St., St. Louis, Mo.," and "The United States of America, Federal Works Administrator, By Rufe B. Newman, Jr., Chief, Construction Division."

In connection with the negotiations for the contract, Bartholomew was told by Newman that, since the partnership was a Missouri firm, it must have a Virginia engineer as an associate, and that the selection would be up to Bartholomew under whatever arrangement he wished to make. Pursuant to this requirement, he selected R. Stuart Royer, of Richmond, Virginia, as the Engineer, and on January 18, 1942, the partnership entered into a written contract with Royer.[1] It was later orally agreed that he was to receive a per diem of $50 for his visits to the work as it progressed and was to have an 18% participation in profits, and was to share losses, as a "complete associate."

Separate books of account were kept for the Norfolk-Portsmouth project. Norfolk, Virginia, accountants were employed, so that a full record could be kept of "what went on." The books were kept upon an accrual, instead of a cash, basis. A bank account was kept at Norfolk in the name of Harland Bartholomew & Associates. Signature cards at the bank were signed by the partners. Royer's name was not on the cards. He contributed no capital to the partnership. He contributed personal services as "an associate for purposes of technical work." At no time did the tax returns of the partnership list Royer as one of the partners.

It was originally contemplated that the work under the Government contract could be completed in six months. Delays occasioned by the Government resulted in dragging out the work for over a year and a half. It was completed in August, 1943. The partnership suffered a loss of about $39,000 in performing the contract. The partnership had, in addition to the main contract, three or four supplemental contracts with the Government, entered into subsequent to January 5, 1942, calling for architectural and engineering services in the same locality.

The Government did not require the partnership to have an associate for architectural work. A St. Louis architect named Wischmeyer was employed by the partnership on a percentage-of-profits basis in connection with that work under the supplemental contracts, and Royer performed the engineering services.

In the final accounting with Royer, the partnership paid him the agreed 18% of the profits made under the supplemental

[1] "This agreement made and entered into this ⸺ day of January, 1942 by and between Harland Bartholomew and Associates, Site Planners and Engineers of St. Louis, Missouri, hereinafter referred to as the parties of the First Part, and R. Stuart Royer, Consulting Engineer of Richmond, Virginia, hereinafter referred to as the Party of the Second Part.

"Section 1. The Parties of the First Part have been selected by the Defense Housing Division of the Federal Works Administration to have charge of and be responsible for the making of topographical surveys, site plans, plans and specifications for all utilities and site improvements, and supervision of all utilities and demountable dwelling units on sites which will contain approximately 11,000 dwelling units in the Hampton Roads area of the State of Virginia.

"Section 2. It is essential that the Parties of the First Part associate with a competent firm of engineers so that this work can be carried out with the maximum speed and efficiency.

"Section 3. The party of the Second Part is a competent Engineer conversant with local conditions and problems in the Hampton Roads Area and has a staff of competent employees available for the surveying and for other phases of the program.

"Section 4. The two Parties to this memorandum hereby agree to an association in which the Parties of the First Part will have control and be responsible for the entire project or projects and the details of the agreement including the amount of work, the financial remuneration therefor and the allocation of expenses will be decided and agreed upon at a later date.

"Signed this 18 day of January, 1942."

contracts. It did not require him to bear any part of the loss on the main contract, because the partnership felt that it had a legitimate claim against the Government for additional compensation. It was agreed that if the claim was paid, Royer was to have 10%. By an Act of Congress, 59 Stat. 746, the partnership in 1945 received $58,000 as compensation for its loss under the main contract plus a ten per cent allowance for its services. Royer received his 10% of that amount.

Upon the completion of the main contract in the fall of 1943, there was a balance due the partnership of $32,434, for which a voucher was submitted to the Government in December, 1943. The Government paid $23,000 to the partnership in May, 1944, and the balance of $9,000 was withheld until sometime in 1945.

Since the $23,000 received by the partnership in 1944 accrued in 1943 and the books of account of the partnership with respect to the Norfolk-Portsmouth project covered by the main contract were kept upon an accrual basis, and since petitioners contended that Royer was a member of the partnership with respect to that project, the petitioners claimed the right to treat that $23,000 as income for 1943. The Commissioner of Internal Revenue disagreed, and determined that the $23,000 was income for 1944, and assessed deficiencies against the petitioners accordingly. On review, the Tax Court sustained the Commissioner.

Concededly, the controlling question in the case is whether Royer was a partner of Harland Bartholomew & Associates in the Norfolk-Portsmouth project within the meaning of Section 3797(a)(2) of Title 26 U.S.C.A. reading as follows:

"(a) When used in this title, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof—

\*    \*    \*    \*    \*    \*

"(2) Partnership and partner.

"The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization."

In its findings of fact and opinion (unreported), the Tax Court first stated: "The sole question is whether R. Stuart Royer joined with Harland Bartholomew & Associates as a partner or joint adventurer in the execution of the Norfolk-Portsmouth project." The court then stated the facts, and found that "Harland Bartholomew & Associates and R. Stuart Royer did not intend to join together for the purpose of carrying on the Norfolk-Portsmouth project as a joint venture."

In its opinion, the Tax Court, after saying that Section 3797(a)(2) provides that the term "partnership" includes, among other things, a joint venture, and that the outstanding difference between a joint venture and a partnership is that the former relates to a single transaction, while the latter relates to a general and continuing business of a particular kind, states: "The question to be decided in these proceedings is whether the Norfolk-Portsmouth project was a separate joint venture." Then follows this statement: "A 'joint venture' exists 'when two or more persons combine in a joint business enterprise for their mutual benefit, with an express or implied understanding or agreement that they are to share in the profits or losses of the enterprise, and that each is to have a voice in its control and management.' Chisholm v. Gilmer [4 Cir.], 81 F.2d 120, 124. Joint ventures and partnerships are so similar in character that they are usually tested by the same rules. 48 C.J.S. [Joint Adventures § 1, page] 808." The Tax Court refers to the cases of Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659, and to the facts that the contract of January 5, 1942 (drafted prior to, but executed after, Royer's association with the partnership) was between the partnership and the Government; that in its contract with Royer

the partnership retained control of the entire project or projects, and the contract provided that "the details of the agreement including the amount of work, the financial remuneration therefor and the allocation of expenses" would be decided and agreed upon at a later date; that all business was conducted and the bank account carried in the name of the partnership; that the partnership furnished the capital and paid the expenses for the project; that Royer's compensation was taken as a deduction on the partnership returns; that the partnership never filed a return in which it treated Royer as "a partner or joint adventurer"; that the books and records of the project show the amount due Royer as an "account payable due trade creditors," rather than as a part of undistributed earnings of the project; and that Royer received a share of profits only on projects on which he performed engineering services, while the members of the partnership received a share of the profits on all of the projects.

The concluding paragraph of the Tax Court's opinion reads as follows: "In a joint venture 'there is usually joint participation in the management and conduct of the enterprise, or there is the right of mutual control'. 48 C.J.S. [Joint Adventures, § 2, page] 810. Here the sole control and responsibility for the entire project or projects reposed in the partnership. While it is true that sharing of profits and losses is an important factor in determining whether a joint venture exists, it is not conclusive. Seymour v. Wildgen, [10 Cir.], 137 F.2d 160, 162. The decisive question is, as the Supreme Court pointed out in Commissioner [of Internal Revenue] v. Tower, supra [327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670], and Commissioner [of Internal Revenue] v. Culbertson, supra [337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659], whether the parties really and truly intended to join together in the present conduct of the enterprise as a joint venture. After a careful consideration of all of the evidence submitted we have reached the conclusion that they did not, and have made a finding to this effect. It follows from this finding that the respondent correctly determined that the income from the Norfolk-Portsmouth project should be reported on the partnership return for 1944 on the cash receipts and disbursements basis of accounting used by the partnership."

The Commissioner contends that the Tax Court found, in substance, that Royer was not a partner within the meaning of Section 3797(a)(2) in the carrying out of the Norfolk-Portsmouth project. The petitioners contend that what the Tax Court found was that Royer was not a joint adventurer, because the "sole control and responsibility for the entire project or projects reposed in the partnership," and that the court failed to find that he was not a "partner" within the broad meaning of that term as defined in Section 3797 (a)(2).

■ Whether, under the evidence, Royer was a "partner" with respect to the Norfolk-Portsmouth project, or merely an employee of the partnership of Harland Bartholomew & Associates, was a question of fact for the determination of the Tax Court. This is clearly indicated by the decisions of the Supreme Court in Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 287, 66 S.Ct. 532, 90 L.Ed. 670, and Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. In the latter case at pages 742, 743 of 337 U.S., at page 1214 of 69 S.Ct., the Supreme Court said: "The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts —the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particu-

larly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted. * * *"

It cannot be said that, as a matter of law, Royer was or was not a "partner" with respect to the Norfolk-Portsmouth project. Apparently the Government, in requiring the partnership to engage a Virginia engineer as an associate in the performance of the work, contemplated that he should be something more than a mere employee; but that fact alone would not be of controlling significance. We know of no reason, however, why Royer could not be a "partner" unless he was also a "joint adventurer" with joint control, or why the fact that his relationship to Harland Bartholomew & Associates was confined to the Norfolk-Portsmouth project would prevent his being a "partner" with respect to that work. There are, of course, many kinds of "partnerships" and many kinds of "partners", as Section 3797(a)(2) indicates and as the Tax Court has recognized.

We note that in Stern v. Commissioner, 15 T.C. 521 (Oct. 18, 1950), the court held that Section 3797 includes a partnership in which trusts were limited partners, although the settlor of the trusts was also the trustee, and the beneficiaries had no control of the business. The court said of the settlor: "He retained entire control in himself but that is of no particular significance since limited partners normally have no part in the control or management of the business." Lack of control is, no doubt, a circumstance to be considered in appraising the relationship of Royer to the partnership in the instant case, but it seems to have been unduly stressed by the Tax Court.

The situation which confronts us is this. There is a defect in the decision of the Tax Court in that it contains no specific finding that Royer was not a "partner" of the petitioners with respect to the Norfolk-Portsmouth project. That defect can be attributed to the fact that the petitioners in their petition for a redetermination of the deficiencies found by the Commissioner asserted that he had erred in including in the income of the partnership, income from a "joint venture". That was the issue specifically tendered by the petitioners for determination by the Tax Court and the issue determined by it.

In their petition for review by this Court of the decision of the Tax Court, the petitioners assert that the Tax Court erred in holding that "R. Stuart Royer was not a joint adventurer with petitioners in carrying out the Norfolk-Portsmouth project." Technically, at least, the petitioners are not in a position to urge us to reverse the decision of the Tax Court for limiting its determination to the specific issue tendered by them. The Tax Court, however, knew, as we know, that the liability of the petitioners depended upon the question whether Royer was a "partner" within the meaning of Section 3797(a)(2). The absence of a specific finding that Royer was not a "partner" leaves the case in an unsatisfactory condition, which the Tax Court alone can correct.

█ The fact that the Tax Court properly decides a specific issue presented to it for decision does not necessarily preclude this Court from considering whether, under the law which is clearly and obviously applicable, the liability of a taxpayer has been soundly and justly determined. Compare, Helvering v. Taylor, 293 U.S. 507, 515-516, 55 S.Ct. 287, 79 L.Ed. 623; Hormel v. Helvering, 312 U.S. 552, 557, 61 S.Ct. 719, 85 L.Ed. 1037.

█ We think that, while the determination of the Tax Court that Royer was not a "joint adventurer" with respect to the Norfolk-Portsmouth project cannot be held to be erroneous, the findings in that regard are not adequate to support the conclusion that the petitioners are necessarily liable for the deficiencies determined by the Commissioner. For that reason, the redetermination by the Tax Court of the deficiencies in suit is vacated and the case is remanded to it for a rehearing and determination, upon the present record, of the question whether or not Royer was a "partner" of petitioners with respect to the Norfolk-Portsmouth project.

JOHNSEN, Circuit Judge (dissenting).

I do not think it properly can be said that the Tax Court has failed to pass upon the necessary questions in the case, and so I feel obliged to dissent.

The Commissioner had assessed deficiencies against petitioners, on income from the Norfolk-Portsmouth project, for the year the cash payment was received, on the ground that the partnership, under which petitioners carried on their general operations, was returning its income otherwise on a cash basis and so could not use an accrual basis for the Norfolk-Portsmouth project. Petitioners had contended that in the execution of the Norfolk-Portsmouth project they had made an arrangement with another engineer named Royer, which had given rise to a new partnership within the revenue statutes for that project, distinct from the general partnership under which petitioners conducted their other operations and entitled as such to keep its records and return its income on an accrual basis, without regard to the fact that the general partnership was using a cash basis.

In seeking a redetermination by the Tax Court of the assessed deficiencies, petitioners of course had the burden of establishing that a separate entity, of a form recognized by the revenue statutes, had been created and existed in the execution of the Norfolk-Portsmouth project. Under the statute, such an entity was not limited to being a conventional general partnership, for section 3797(a)(2) of the Internal Revenue Code, 26 U.S.C.A. § 3797(a)(2), makes the concept of partnership, for income tax purposes, include "a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation; and the term 'partner' includes a member in such a syndicate, group, pool, joint venture, or organization." Petitioners therefore would have been entitled to claim a partnership with Royer as to the Norfolk-Portsmouth project, for

income tax purposes, on the basis of any of the designations or forms of organization enumerated in the statute which they could demonstrate had existed.

Their petition in the Tax Court claimed that the Norfolk-Portsmouth arrangement had created a "joint venture" and on this basis was within the concept of a "partnership" under the statute. Four times the petition uses the term "joint venture" in referring to the arrangement. No where is there any claim or suggestion of reliance upon any other form of "partnership" under the statute, such as a general one or "a syndicate, group, pool, * * * or other unincorporated organization".

In this situation, I do not see how the Tax Court could do other than say, as it did—"The question to be decided in these proceedings is whether the Norfolk-Portsmouth project was a separate joint venture. If it was, the net income derived from this project could be reported on the partnership returns of Harland Bartholomew & Associates on the accrual basis as the books of the project were kept on that basis. If not, the net income from the project must be reported on the partnership returns on its regular cash receipts and disbursements basis."

When the Tax Court found that the arrangement which petitioners made with Royer had not given rise to a joint venture between them—which finding the majority opinion concedes "cannot be held to be erroneous"—petitioners' claim of partnership on the basis of that concept (and the only basis which it had claimed) automatically fell, and the Tax Court's statement, that "It follows from this finding that the respondent correctly determined that the income from the Norfolk-Portsmouth project should be reported on the (general) partnership return for 1944 on the cash receipts and disbursements basis of accounting used by the partnership," left nothing else to be said.

I am unable therefore to see any ground or warrant for the statement in the majority opinion that the Tax Court's finding, that no joint venture existed between peti-

tioners and Royer as to the Norfolk-Portsmouth project, is "not adequate to support the conclusion that the petitioners are necessarily liable for the deficiencies determined by the Commissioner" or for its mandating of "a rehearing and determination, upon the present record, of the question whether or not Royer was a 'partner' of petitioners with respect to the Norfolk-Portsmouth project."

Why should the Tax Court be required to go back and negative the other possible bases of partnership under the statute—general partnership, syndicate, group, pool or other organization—when no issue or even contention was presented to it that any of these statuses or forms were present? It was up to petitioners to assert and establish the position upon which they relied for having the Commissioner's assessments overthrown.

Repeating—when petitioners filed their petition in the Tax Court they made the claim that the Norfolk-Portsmouth project was a joint venture and that on this basis a partnership had existed within the statute. When the Tax Court held that no joint venture had existed, petitioners did not contend, by means of a petition for rehearing, that this finding did not enable the Tax Court to dispose of the case. Their contention simply was that the finding itself was erroneous on the evidence. And when they filed their petition for review in this Court, they set out as the point upon which they relied for reversal that "The court erred in holding that R. Stuart Royer was not a joint adventurer with petitioners in carrying out the Norfolk-Porstmouth Project."

The suggestion that the Tax Court should have determined whether any other basis or form of partnership under the statute might have existed in the situation has come crawling into the case in the brief which petitioners have filed in this Court. It is an attempt to get a new trial by means of questions never urged or regarded as being involved before the Tax Court. Not only is the injection untimely but it rests on mere abstraction as well, for not even a pretense is made of demonstrating that the evidence would permit of a contention

that some other concept or form of partnership within the statute than a joint venture had been involved.

On all of this, the basis of the majority opinion and the requirement of its mandate seem to me unsound and anomalous as a review of a Tax Court decision.