ESTATE of Craig M. SMITH, Deceased, Ruth E. Smith, Executrix, et al., Petitioners,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

No. 16759.

United States Court of Appeals Eighth Circuit.

Feb. 12, 1963.

J. Terrell Vaughan of Armstrong, Teasdale, Roos, Kramer & Vaughan, St. Louis, Mo., for petitioners, Charles E. Dapron and Edwin S. Baldwin, of Armstrong, Teasdale, Roos, Kramer &

Vaughan, St. Louis, Mo., and Richard A. Beyer of Hubachek & Kelly, Chicago, Ill., on the brief.

John B. Jones, Jr., Acting Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for the respondent, Louis F. Oberdorfer, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., and Lee A. Jackson, I. Henry Kutz and Carolyn R. Just, Washington, D. C., on the brief.

Before SANBORN, VAN OOSTERHOUT and MATTHES, Circuit Judges.

VAN OOSTERHOUT, Circuit Judge.

The petitioning taxpayers named in the caption have filed timely petition for review of the decisions of the Tax Court determining substantial income tax deficiencies and penalties against the individual taxpayers and their wives, who joined in their returns, for the years 1951 to 1955 inclusive, and against the fund petitioners for the years 1953 and 1954.[1]

The Commissioner sent each of the taxpayers notice of deficiency and each taxpayer petitioned the Tax Court for redetermination of the deficiency. The 18 cases before us for review involve common questions of law and fact. They were consolidated and tried upon a stipulated record to the Tax Court and are consolidated upon this review. The Tax Court entered a decision in each case determining the deficiency. The opinion of the Tax Court covering all of the cases and setting forth the factual determinations and the basis of the decision is found in 33 T.C. 465. Petitioners Smith,[2] Longstreet, Abbott and Hilby during all times material were partners in the firm of Longstreet-Abbott & Company. Like the parties, we shall refer to such firm as LACO. The firm had its principal place of business at Clayton, Missouri. The partners, through experience and study, had acquired knowledge

and skill in the field of commodity trading and had developed plans which they believed would produce substantial profits in commodity trading. LACO is organized for the purpose of engaging in activities relating to commodity trading both in their own behalf and for others.

It is agreed that LACO is a partnership and that its members are to be taxed as partners. LACO during each year filed partnership returns and the individual members of LACO, with their wives joining, filed estimated tax returns and income tax returns for the years in controversy and paid taxes due in the amounts disclosed by such returns. The present litigation arises out of two types of transactions, thus described in the stipulation:

1. "Buying and selling commodity futures and spot commodities for others ('cash participants') in Individual Trading Accounts, each managed independently by Longstreet-Abbott & Company. Such purchases and sales were made in the name of the 'cash participant'."

2. "Buying and selling commodity futures and spot commodities for others ('cash participants') in six common 'funds', each of which 'fund' is managed independently by Longstreet-Abbott & Company for those who furnish the capital for such purpose. Such purchases and sales were made in the name of the 'fund' * * *"

LACO and its individual members had reported the income received from the individual trading accounts as income derived from the partnerships with the individual investors in the form of capital gains. The Commissioner determined that the individual trading accounts were not partnerships within the meaning of the income tax statutes, and that LACO's income derived from the

1. The Tax Court opinion sets out in detail the amount of the deficiencies determined against each petitioner. Deficiencies against the individual petitioners aggregate about $732,000, and those against the funds, $203,000, plus accruing interest and penalties under § 294(d) (1) (B) of $121 and under § 294(d) (2) penalties of $37,113.

2. Upon Smith's death, the executrix of his estate was substituted as a party.

individual trading accounts was not entitled to capital gain treatment as distributive shares of partnership income, but instead was ordinary income in the form of compensation for services rendered.

LACO and its members had also reported the income derived from the trading funds upon a capital gain basis, upon the theory that the trading funds were partnerships of which LACO was a member, and that the income LACO had received from the funds was its distributive share of partnership capital gains.

The LACO partnership agreement provided that Mr. Longstreet was entitled to LACO's share of the profits realized from certain designated trading accounts. Longstreet received such profits and reported them as capital gains. The parties agree that the taxability of such profits is controlled by the decision on similar issues relating to LACO's profit from the individual trading accounts and the funds.

The individual members of LACO and their wives made personal investment in the various funds, such investments being authorized by the fund contracts. They treated such income as capital gain on their distributive share of partnership income.

The Commissioner determined that the trading funds were associations taxable as corporations and that LACO's share of the fund profits was ordinary income in the form of compensation for services. The Commissioner further held that the petitioning LACO members with respect to their individual investment in the funds realized ordinary income in the form of dividends, and that the investing petitioners did not suffer losses when the funds suffered a net loss for a taxable year. The Commissioner also assessed penalties in some instances for late payment of estimated taxes and for substantial underestimation of income.

All the foregoing determinations by the Commissioner were upheld by the Tax Court. The petitioners here challenge the determination of the Tax Court upon all of the foregoing issues. The factual background is fully and fairly stated in the Tax Court's opinion. The agreements which it is claimed create joint ventures, both with the individual investors and with the fund investors, are set out in full. We cannot set out all such material without unduly extending this opinion. We will, however, summarize the basic facts during the course of this opinion.

We observe that the individual investors and the cash participants in the funds are not parties to this litigation. Some of the cash participants in the funds have, by leave of court, filed brief as amici curiae.

■■■ The standards for review of decisions of the Tax Court are well established and are not seriously in dispute. Findings of the Tax Court which are supported by substantial evidence upon the record as a whole, and which are not against the clear weight of the evidence or induced by an erroneous view of the law, cannot be upset. The findings of the Tax Court are presumptively correct. The burden rests upon the petitioner to show that the findings upon which the Tax Court decision is based are clearly erroneous. We do not try issues of fact de novo. Schoenberg v. Commissioner, 8 Cir., 302 F.2d 416, 419; Kemper v. Commissioner, 8 Cir., 269 F.2d 184, 185; Greenspon v. Commissioner, 8 Cir., 229 F.2d 947, 949.

■■■ The Tax Court is permitted to draw reasonable inferences from established facts. This rule is operative in situations where facts are stipulated or undisputed. Commissioner of Internal Revenue v. Duberstein, 363 U.S. 278, 291, 80 S.Ct. 1190, 4 L.Ed.2d 1218; G. W. Van Keppel Co. v. Commissioner, 8 Cir., 295 F.2d 767, 771; American Metal Products Corp. v. Commissioner, 8 Cir., 287 F.2d 860, 864; Crown Iron Works Co. v. Commissioner, 8 Cir., 245 F.2d 357, 360; Heil Beauty Supplies, Inc. v. Commissioner, 8 Cir., 199 F.2d 193, 195.

We shall now consider the errors relied upon for reversal.

Individual Trading Accounts.

Petitioners state:

"The individual trading accounts were partnerships for tax purposes between LACO and cash participants; LACO's share of the profits and losses from such partnerships was in the form of capital gains and capital losses.

"The Tax Court, therefore, erred in holding that LACO was an employee of the cash participant; that LACO's share of the profits was ordinary income in the form of compensation for personal services; and that LACO sustained no deductible loss when an individual trading account suffered a net loss for a calendar year."

The Tax Court made the following finding and determination upon the partnership issue:

"Moreover, there is no noteworthy evidence that the parties, particularly LACO's clients, really and truly intended to form partnerships with LACO. On the contrary, it would seem that all that was intended was an employer-employee relationship with a provision for payment of a percentage of the profits as compensation. Respondent's determination is sustained."

We believe that such finding is supported by substantial evidence and is not induced by any erreoneous view of the law.

■ The tax burden for partnership income is placed upon the individual partners. Their distributive share of the partnership income takes on the same character as if such income were realized directly from the source. I.R.C. 1954, § 702; I.R.C.1939, §§ 182–183. The Tax Court here found that the profits realized from the trading in commodities were capital gains and the Commissioner has not appealed from such determination. Hence, if a partnership existed between LACO and the individual investors, the LACO partners properly reported their distributive share of income as capital gains. On the other hand, if the Tax Court properly determined no partnership relationship existed and the income received by the LACO partners was in fact compensation for services rendered, the Tax Court's decision upon this issue should be affirmed.

Thus the critical issue here presented is whether petitioners have demonstrated that the Tax Court's finding that no partnership relationship existed between LACO and the individual investors is clearly erroneous; that is, was the finding induced by an erroneous view of law or does it lack substantial evidentiary support?

We shall first look to the applicable law. I.R.C.1939, § 3797(a) (2) states in part:

"The term 'partnership' includes a syndicate, group, pool, joint venture, or other unincorporated organization, through or by means of which any business, financial operation, or venture is carried on, and which is not, within the meaning of this title, a trust or estate or a corporation;
* * *."

The same definition is retained in I.R.C.1954, § 761(a).

■ Petitioners contend that the evidence conclusively establishes a joint venture between LACO and the individual investors. By statutory definition a joint venture is a form of partnership. It is established that the basic principles applicable to determine the existence of a partnership apply to the resolution of joint venture status. Beck Chemical Equipment Corp. v. Commissioner, 27 T.C. 840; Cleveland v. Commissioner, 4 Cir., 297 F.2d 169, 172; 6 Mertens, Law of Federal Income Taxation, § 35.05.

■ The landmark cases setting forth what constitutes a valid partnership for federal income tax purposes are Commissioner of Internal Revenue v. Tower, 327 U.S. 280, 66 S.Ct. 532, 90 L.Ed. 670, and Commissioner of Internal Revenue v. Culbertson, 337 U.S. 733, 69 S.Ct. 1210, 93 L.Ed. 1659. They are cited and relied upon by all parties to this litigation.

In Tower, the Court in upholding the Tax Court's conclusion that a partnership had not been established, states:

"When the existence of an alleged partnership arrangement is challenged by outsiders, the question arises whether the partners really and truly intended to join together for the purpose of carrying on business and sharing in the profits or losses or both. And their intention in this respect is a question of fact, to be determined from testimony disclosed by their 'agreement, considered as a whole, and by their conduct in execution of its provisions.'" 327 U.S. 286–287, 66 S.Ct. 535.

The Court also rejects taxpayers' contention that the partnership should be upheld because valid under state law, by stating:

"The statutes of Congress designed to tax income actually earned because of the capital and efforts of each individual member of a joint enterprise are not to be frustrated by state laws which for state purposes prescribe the relations of the members to each other and to outsiders." 327 U.S. 288, 66 S.Ct. 536.

The Court in Culbertson reiterates the Tower intention test heretofore set out and emphasizes that the test is concerned specifically with intent rather than objective indicia, stating:

"The question is not whether the services or capital contributed by a partner are of sufficient importance to meet some objective standard supposedly established by the Tower case, but whether, considering all the facts—the agreement, the conduct of the parties in execution of its provisions, their statements, the testimony of disinterested persons, the relationship of the parties, their respective abilities and capital contributions, the actual control of income and the purposes for which it is used, and any other facts throwing light on their true intent—the parties in good faith and acting with a business purpose intended to join together in the present conduct of the enterprise. There is nothing new or particularly difficult about such a test. Triers of fact are constantly called upon to determine the intent with which a person acted." 337 U.S. 742–743, 69 S.Ct. 1214.

Both Culbertson and Tower are family partnership cases. While family partnership cases present some problems not present in arms'-length partnerships, the general principles set out in Tower and Culbertson apply to all partnership situations.

In Bartholomew v. Commissioner, 8 Cir., 186 F.2d 315, we set out and applied the Culbertson and Tower tests to a joint venture entered into between strangers dealing at arms-length. We stated:

"Whether, under the evidence, Royer was a 'partner' with respect to the Norfolk-Portsmouth project, or merely an employee of the partnership of Harland Bartholomew & Associates, was a question of fact for the determination of the Tax Court." 186 F.2d 318.

All judges agreed that the evidence was sufficient to support the Tax Court's finding that the parties did not intend to join together in the conduct of the enterprise as a joint venture. The Tax Court had made no finding as to the existence of a partnership. The majority, believing that some type of partnership other than a joint venture could possibly be found to exist, remanded the case for an express finding upon the issue of whether there was a partnership. Judge Johnsen, in his dissent, expressed the view that the Tax Court's finding that no joint venture existed was adequate to support the court's decision as no other type of partnership had been asserted and that no showing was made that any type of partnership other than a joint venture did exist. The basic problem confronting us here is similar to that in Bartholomew, to wit, whether the contract here involved creates a joint venture or some other type of partnership, or whether it was essentially intended /

to be a contract for employment fixing a contingent fee of a percentage of the profits as compensation.

In Nelson v. Seaboard Surety Co., 8 Cir., 269 F.2d 882, a case involving Minnesota law, we held that there was no arbitrary test for determining the intent of the parties to enter into a partnership and that each case must turn on its own facts. We also held that the fact that the parties agreed they were not partners was not conclusive and that it was the substance of their agreement when considered as a whole in the light of all the evidence and not the form which controls. See 68 C.J.S. Partnership § 24b, p. 444.

■ In determining the taxability of a transaction, we are concerned with the substance of the transaction as reflected by the evidence as a whole, rather than with the form employed. Commissioner of Internal Revenue v. Court Holding Co., 324 U.S. 331, 334, 65 S.Ct. 707, 89 L.Ed. 981; Schoenberg v. Commissioner, supra, 302 F.2d pp. 918–919; Lannan v. Kelm, 8 Cir., 221 F.2d 725, 736; Meier v. Commissioner, 8 Cir., 199 F.2d 392, 395.

Commissioner v. Court Holding Co., supra, and United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, illustrate the great weight given to trial courts' determinations upon fact issues relating to the real substance of a transaction. In Court Holding Co., a corporation agreed to sell assets to a third party. Before the sale was completed, it was discovered the taxes could be avoided by distributing the property to the corporation's two stockholders as liquidation dividends. This was done and the shareholders proceeded to sell the property to the same third party. The Supreme Court upheld the Tax Court's finding that the sale was made by the corporation; that the true nature of the transaction was disguised by mere formalism.

United States v. Cumberland Public Service Co., 338 U.S. 451, 70 S.Ct. 280, 94 L.Ed. 251, involved much the same facts. This time the purchaser made an offer to the closely-held corporation which was refused. But the stockholders, wanting to save on taxes, offered to acquire the property and then sell it to the purchaser. The purchaser accepted, and the plan was carried out. The Court of Claims held for the taxpayer, and the Supreme Court affirmed, concluding:

"It is for the trial court, upon consideration of an entire transaction, to determine the factual category in which a particular transaction belongs. Here as in the Court Holding Co. case we accept the ultimate findings of fact of the trial tribunal. Accordingly the judgment of the Court of Claims is *Affirmed*." 338 U.S. 456, 70 S.Ct. 282.

Upon the basis of the foregoing legal background, we look to the facts to ascertain whether the court's determination that a contract of employment rather than a partnership exists between LACO and the individual investors is supported by substantial evidence.

LACO, through publications and by other means, attracted some 136 individual trading accounts with investors in 26 states and England. Each investor was required to make a minimum commitment of $50,000 to be used as margin in trading and to deposit such margin upon occasion with a broker. Each investor in starting a trading account executed five documents, the one most pertinent here being the "Agreement for an Individual Trading Account," which is set out in full in the Tax Court's opinion. The substance of the agreement as summarized by petitioners is:

"the parties will enter into a joint venture;

"the cash participant will furnish the original capital;

"LACO will furnish its services and also its time, experience, research and office facilities, at its own expense;

"the parties will select brokers;

"the accounts of the venture will be identified by the name of the cash

participant and the LACO's distinctive number;

"the parties will be co-owners of the commodity futures acquired;

"LACO has complete discretion in determining the trades to be made for the venture, and it shall keep the books of the venture;

"profits and losses are to be apportioned, 40% to LACO, 60% to the cash participant, except on termination when other provisions of the contract govern;

"the parties may withdraw profits from the venture except that under certain circumstances they are obligated to restore the said profits withdrawn;

"under stated circumstances LACO must leave its profits in the venture for indefinite periods;

"either party may terminate the contract at any time without cause. On termination, specific provisions are made for the distribution of capital and of profits or losses. Net losses are charged first to the cash participant to the extent of his capital commitment. All losses in excess of his capital commitment are borne by LACO."

It is quite true that the agreement describes the transaction as a joint venture. However, as heretofore pointed out, the name given to a relationship in the contract or agreement is not conclusive on the issue of what it really is.

Petitioners state that the indicia pointing to a partnership relationship here present include the following:

"(1) a sharing of profits;

"(2) a sharing of losses;

"(3) ownership and control over the profits while they remain undivided;

"(4) assumption of financial risk by LACO, the partner contributing services;

"(5) co-ownership of the properties producing those profits."

Petitioners concede that none of such tests is conclusive. Culbertson teaches that objective standards must yield to ascertainment of the true intention of the parties to in good faith enter into a partnership relationship.

In any event, petitioners have not conclusively established that the individual investor agreements met some of the asserted objective standards. The statement in the agreement that the individual investor and LACO shall be co-owners of spot and future commodities purchased appears to be largely fiction and to be contrary to the provisions of the contract as a whole when viewed in the light of all the evidence. The capital was deposited with the broker in the investor's name. The commodities were likewise purchased in the name of the investor. LACO's power to manage the trading accounts arose largely out of separate powers of attorney, directions to broker, and letter to Board of Trade executed and delivered by the investor.

LACO in its business soliciting brochure on the title page states:

"AN UNUSUAL
INVESTMENT OPPORTUNITY
IN COMMODITIES
AN INDIVIDUAL ACCOUNT
MANAGED BY
LONGSTREET-ABBOTT
& COMPANY."

The cash participant's "participation" in the trading done by LACO is outlined as follows:

"Today, the opportunity to participate in the trading done by Longstreet-Abbott & Company is open to you through an:

"*Individual Account,* which can be managed to fit your special investment needs or your special tax problems. On these accounts the individual deposits his money with a broker in his own name, reserving to himself all rights to add or withdraw any money. LACO trades the account for him under a power of attorney restricted to trading in commodities. * * *"

It is further stated in a question-answer section of the brochure:

"Q. What protection is there for a participant's money?

"A. Account is in the name of the individual at the brokerage house. LACO has no authority to or way of withdrawing any funds from the account. LACO has only authorization to place trades for the account."

LACO's own participation in the account is described in the brochure as being wholly managerial, and LACO's compensation for managerial services is described as follows:

"WHAT DOES MANAGEMENT COST?

"There are no management fees or charges against the capital you invest. Remuneration to Longstreet-Abbott & Company for their management services is realized through a profit-sharing arrangement—60% to the individual and 40% to LACO —the only charges against the trading are the commissions of brokers. * * * "

Upon the basis of such evidence, the Tax Court was justified in finding as it did that LACO had no economic interest in the capital or the commodities purchased as such but only an interest in the sharing of the profits which might be realized from trading. Co-ownership is not an actual reality unless the co-owner has some genuine right in the property. LACO had no right to claim or withdraw any of the cash deposited with the broker. Upon dissolution, which could be effected at will by either party, all remaining capital belonged to the investor. We find nothing to indicate that LACO had any interest in any commodities purchased. Its rights were limited to 40% of the profits realized from the trading transactions.

The contract provisions relating to LACO's financial risk and its sharing of losses are quite unusual. Except for some limited use of profits to offset losses, losses are charged against the $50,000 or more capital provided by the

investor. Normally not over 60% of the capital is needed for margin. LACO's experience in the field and its broad power to buy and sell placed it in a position where there was little danger that it would have to respond under its contract for losses which would exceed the capital provided by the individual investor. The evidence discloses that on only four occasions was the full margin required and then only for a short period. There is no evidence that LACO ever was required to respond on its agreement to meet losses above the invested capital. In any event, such a limited assumption of liability would not conclusively establish a partnership or negative the existence of an employment contract.

We now go back to the vital issue of intent, stressed by Tower and Culbertson. The Tax Court aptly points out that there is no noteworthy evidence in the record of the intention of the parties to form a partnership. Culbertson holds that statements of the parties and other facts throwing light upon the intent are admissible in evidence on the question of intent. The material in the LACO brochure, some of which has been hereinabove set out, points quite strongly to the predominant intent on LACO's part to earn compensation for the services which it was qualified to perform. There is no direct testimony in the record to show the intent of the numerous, scattered individual investors to enter into a partnership with LACO. The individual investors could readily have been called as witnesses and interrogated as to their intention.

The mutual objective of the parties as reflected by the record could as readily be accomplished by an employment contract, calling for compensation on a contingent fee basis, as by a partnership relationship. Payment for services in the form of a percentage of profits is not an unusual thing in modern business. See 40 Am.Jur. Partnership, § 45.

█ We hold that under the Culbertson test, a fact question is presented on the existence of a partnership or joint venture relationship between LACO and

the individual investors. While there is evidence which would support a finding of partnership, there is also substantial evidentiary support for the Tax Court's determination that the mutual intent on the part of LACO and the individual investors to enter into a partnership relationship did not exist. Hence, the finding of the Tax Court upon such issue is entitled to be affirmed.

### The Funds.

Petitioners' second point of argument is:

"The funds were partnerships for tax purposes between LACO and the cash participants therein; LACO's share of the profits and losses from the funds was in the form of capital gains and capital losses. The individual petitioners were cash participants in certain of the funds; as such, their share of the profits and losses was in the form of capital gains and capital losses from such partnerships."

We shall first consider petitioners' contention that the Tax Court erred in determining the funds to be associations taxable as corporations.

Such determination, if correct, would adequately support all of the following conclusions drawn by the Tax Court: (1) that the funds are liable as taxable entities for taxes on all income realized from the commodity trading; (2) that any losses are attributable only to the funds; and (3) that all income of the individual petitioners which is derived from their personal investments in the funds is taxable to them as ordinary income in the nature of dividend income.

The applicable statutes are I.R.C.1954, § 7701(3), and I.R.C.1939, § 3797(a) (3), which provide:

"The term 'corporation' includes associations, joint-stock companies, and insurance companies."

The term "association" is undefined in the Code, but numerous cases and Regulations provide guidelines for classifying organizations. The leading authority is Morrissey v. Commissioner, 296 U.S. 344, 56 S.Ct. 289, 80 L.Ed. 263. See also the three companion cases: Helvering v. Coleman-Gilbert Associates, 296 U.S. 369, 56 S.Ct. 285, 80 L.Ed. 278; Helvering v. Combs, 296 U.S. 365, 56 S.Ct. 287, 80 L.Ed. 275; Swanson v. Commissioner, 296 U.S. 362, 56 S.Ct. 283, 80 L.Ed. 273.

While Morrissey presents the specific problem of whether the trust there involved is an association taxable as a corporation, the case is generally regarded as shedding light on the broader problem of what type of organization is an association.

In Morrissey the court states:

"As the statute merely provided that the term 'corporation' should include "associations,' without further definition, the Treasury Department was authorized to supply rules for the enforcement of the Act within the permissible bounds of administrative construction.

\* \* \* \* \* \*

"The difficulty with the regulations as an exposition was that they themselves required explication; that they left many questions open with respect both to their application to particular enterprises and to their validity as applied. \* \* \* While it is impossible in the nature of things to translate the statutory concept of 'association' into a particularity of detail that would fix the status of every sort of enterprise or organization which ingenuity may create, the recurring disputes emphasize the need of a further examination of the congressional intent." 296 U.S. 354–356, 56 S.Ct. 294.

Broadly, the Morrissey case establishes two tests for an association. First, " 'Association' implies associates. It implies the entering into a joint enterprise \* \* \* for the transaction of business", and second, "The inclusion of associations with corporations implies resemblance; but it is resemblance and not identity."

In cases which involve the taxation of trusts as associations, the critical question usually is whether the trust was

created with a business purpose or capacity rather than the secondary or supportive issue of resemblance. See, e. g., Reynolds v. Hill, 8 Cir., 184 F.2d 294, 296; Nee v. Main Street Bank, 8 Cir., 174 F.2d 425, 429; Helvering v. Washburn, 8 Cir., 99 F.2d 478, 481.

As indicated in Treasury Regulations, § 301.7701–2(a) (2),[3] that is because trusts commonly resemble corporations in affording continuity of existence, centralized management, transferability of beneficial interests, and limited liability. By contrast, the critical question in cases involving business organizations such as LACO's trading funds is likely to be the issue of resemblance.[4] See 7 Mertens, Law of Federal Income Taxation, § 38(A).06 (1962 Supp.).

It is reasonable to suppose that the resemblance between an association and a corporation must be substantial, not merely superficial. Regulation § 301.-7701–2(a) (3) provides:

"An unincorporated organization shall not be classified as an association unless such organization has more corporate characteristics than noncorporate characteristics. In determining whether an organization has more corporate characteristics than noncorporate characteristics, all characteristics common to both types of organizations shall not be considered. For example, if a limited partnership has centralized management and free transferability of interests but lacks continuity of life and limited liability, and if the limited partnership has no other characteristics which are significant in determining its classification, such limited partnership is not classified as an association. Although the limited partnership also has associates and an objective to carry on business and divide the gains therefrom, these characteristics are not considered because they are common to both corporations and partnerships."

Before discussing the Morrissey tests for resemblance, it may be helpful to mention briefly the general nature of the trading funds.

The funds, through aggregation of capital, made it practicable for a minimum individual investment of $1,000 (or $5,000, depending on the fund) to be used in substantial commodity trading. Otherwise, the trading funds were entirely *several* rather than *joint* "associations." Compare Equitable Trust Co. v. Magruder, D.Md., 37 F.Supp. 711, 715 (held: no association taxable as a corporation).

The record indicates that the cash participants dealt exclusively with LACO, and not with one another: they were invited in brochures published by LACO (much the same as the brochures addressed to prospective individual account

---

3. At the time of the trial in the Tax Court, Regulations 111, §§ 39.3797–1 through 39.3797–6 were in force and were quoted extensively by the Tax Court. Such regulations have since been superseded by Regulations §§ 301.7701–1 through 301.7701–4, approved November 14, 1960, and effective December 31, 1960. The successive regulations deal with the same statute. The later regulations reflect some change in language from the earlier regulations. The most recent regulations are somewhat more specific and appear to incorporate the judicial interpretations of the statute. The new regulations are entitled to consideration under the circumstances here presented as they clarify what the language of the statute always was intended to convey. See 1 Mertens, Law of Federal Income Taxation, § 3.25; Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 135, 56 S.Ct. 397, 80 L. Ed. 528.

4. Regulation § 301.7701–2(a) (2) provides in part: "On the other hand, since associates and an objective to carry on business and divide the gains therefrom are generally common to both corporations and partnerships, the determination of whether an organization which has such characteristics is to be treated for tax purposes as a partnership or as an association depends on whether there exists centralization of management, continuity of life, free transferability of interests, and limited liability."

cash participants) to participate in the funds; they became parties by executing a "Contract of Participation" with LA-CO; their participation (or withdrawal) was not contingent on the approval of other cash participants; they in turn were given no power to prevent other parties from investing or withdrawing their own capital; and, most important, their interests could readily be evaluated and increased or diminished (or withdrawn) quite independently of the interests of other participants.

While "severality" is also a typical characteristic of corporations, it is much more absolute in the case of the trading funds. Corporate shareholders have severable interests in the corporate entity, but not in the corporate assets; the corporate entity is interposed between the shareholders and the corporate assets. By contrast, each of our fund participants had a genuine, calculable, economic interest in the futures contracts and spot commodities purchased by LACO; the interest held by a given participant included his proportionate share of those trades which were opened after he made his investment but before his investment was withdrawn. His profits and losses were calculated accordingly, but of course LACO shared in the profits and, to some extent, the losses.

The above feature which corporations have, but which is lacking here, has been called "continuity of property." See Guaranty Employees Ass'n v. United States, 5 Cir., 241 F.2d 565, 572 (judgments for Commissioner reversed).

The lower courts have not been in universally absolute agreement about the five or so tests for resemblance set down in Morrissey. Compare Nee v. Main Street Bank, supra, 174 F.2d, pp. 431–432, with Cooper v. Commissioner, 10 Cir., 262 F.2d 530, 534. But there is substantial agreement at all levels that the four critical elements for comparison are (1) centralized control, (2) continuity, (3) limited personal liability, and (4) transferability of beneficial interests. See, e. g., A. A. Lewis & Co. v. Commis-

sioner, 301 U.S. 385, 388, 57 S.Ct. 799, 81 L.Ed. 1174; Wellston Hills Syndicate Fund v. Commissioner, 8 Cir., 101 F.2d 924, 927–928; Treas.Reg. § 301.7701–2; 7 Mertens, Law of Federal Income Taxation, § 38A.10 (1962 Supp.).

The Tax Court, after stating "The Funds in question have many of the characteristics of a partnership on the one hand and of a corporation on the other, and consequently, our decision has been a difficult one", goes on to determine, "The Funds in question have virtually all of the 'salient features' of a corporation as outlined in Morrissey v. Commissioner, supra." The crucial determination just set out appears to be a mixed finding of fact and conclusion of law. The statement, to the extent it represents a finding of fact, lacks substantial evidentiary support. In the course of its opinion the Tax Court states:

> "In reaching our decision we have observed that none of the Funds had the formal characteristics of a corporation; that individual investors could terminate their interests at will and could, within certain limitations, withdraw their profits at will; that the liability of LACO was not limited; that interests in the Funds were not truly transferable; that the method of splitting profits resembled that utilized in a partnership; and that the parties characterized their enterprise as a 'joint venture.'" 33 T.C. 481.

The Government in oral argument, with commendable candor, conceded that the elements of limited liability and free transferability are absent. This concession is entirely consistent with Regulations § 301.7701–2(d)–(e). Such elements represent very important, distinctive features of a corporation. The absence of these two important Morrissey elements should make it unnecessary to discuss the evidentiary support for the Tax Court's decision extensively. However, we observe that the evidence on the continuity element is weak. Unlike a corporate situation, the fund participants

could withdraw their investment at will. While the continuity of the fund would not thus be completely destroyed by the withdrawal of a single participant, it could be effectively destroyed by the withdrawal of a number of participants. Corporate shareholders cannot thus withdraw their investment at will.

We find substantial evidentiary support for the centralized management element.

■ We believe that the Tax Court's decision is based in part upon an erroneous view of the law in its interpretation of the Morrissey requirements as to resemblance. In our view, the funds have substantially greater noncorporate characteristics both in number and importance than corporate characteristics. We are convinced that the Tax Court's decision to the effect that the funds are associations taxable as corporations is clearly erroneous.

We are now confronted with petitioners' contention that the funds are a partnership in the form of a joint venture in which LACO is a partner and that hence the income LACO received from the funds is entitled to capital gain and loss treatment as a distributive share of the partnership income. The Tax Court's decision as to the funds deals largely with the issue of whether the funds possessed the characteristics of a corporation and found that they did. The statement of the Tax Court reading, "We have already rejected petitioners' contention that the Funds were partnerships", can be explained at least in part as resulting from the Tax Court's conclusion that the funds were associations. However, the Tax Court also stated, "It seems clear that LACO was receiving a share of the profits in return for its management services, and the gains it realized are ordinary income both to LACO and to the petitioners composing LACO."

Petitioners in their brief point to the "marked similarity" between the individual trading account contracts and the fund contracts, and urge that their argu-ment that the individual accounts are joint ventures also establishes the joint venture relationship between LACO and the participants in the funds. We agree that LACO's relationship to the funds differs in no material respect from its relationship to the individual account investors. The reasoning supporting the determination that LACO was not a joint venturer with respect to the individual trading accounts compels affirmance of the Tax Court's determination that LACO's relationship to the funds was that of an employee rather than that of a joint venturer. The Tax Court committed no error in treating the income received by LACO for the services it rendered to the funds as ordinary income in the form of compensation for services.

■ This leaves for consideration the tax treatment to be accorded to the members of LACO with respect to their cash participation in the various funds. Since we have held that the funds are not associations taxable as corporations, the Tax Court's holding that the profits from the funds must be taxed as ordinary income in the form of dividends is without legal support.

We find no legal basis for treating as ordinary income the profits which members of LACO who were cash participants in the funds received as a result of their investments. The LACO cash investors are entitled to the same tax treatment as the other cash participants in the funds. The Tax Court has determined that profits and losses resulting from the commodity trading are entitled to capital gain and loss treatment. Thus the petitioners are entitled to treat their portion of the profits or losses in commodity trading attributable to their investments in the funds as capital gains or losses. This result follows whether the cash participants are considered as joint venturers with other cash participants or as separate individual investors.

Additions to Tax.

We affirm the Tax Court's decision as to penalties under § 294(d) (1) (B) as-

sessed against Longstreet, Smith and Hilby for the year 1953 upon the basis of the Tax Court's opinion. The only evidence in the record is that the payments due on January 15, 1954, were received on January 18 and January 19. It is not shown whether such payments were mailed or personally delivered. Taxpayers have not sustained the burden of showing that the delay in payment was due to reasonable cause.

 The Tax Court also upheld substantial penalties assessed under § 294 (d) (2) upon the basis that 80% of the tax liability exceeded the estimated tax and that the taxpayers did not fall within the exceptions provided by the statute. Petitioners claim that they made their estimates in good faith, believing that they were entitled to report income on a capital gain basis. The statute does not make good faith or reasonable cause a defense to the underestimation penalty. United States v. Steck, 10 Cir., 295 F.2d 682, 684–685; Kaltreider v. Commissioner, 3 Cir., 255 F.2d 833, 839.

The decision of the Tax Court upon this issue is affirmed subject to the modification that the amount, if any, of substantial underestimation should be reexamined and recomputed upon computation of taxes due in accordance with this opinion.

### Other Issues.

The issues as to Longstreet are resolved in the same manner as those relating to the LACO partners.

 Petitioners filed various post-trial motions, including motion for reconsideration by the Tax Court of report of division, a motion for reconsideration by the division, and a motion to reopen the record for submission of supplementary evidence. All of the motions were denied. The disposition of such motions usually rests in the sound discretion of the Tax Court and the denial of such motions will not be reviewed in the absence of extraordinary circumstances. Arc Realty Co. v. Commissioner, 8 Cir., 295 F.2d 98, 107. We find no abuse of discretion on the part of the Tax Court in denying the motions.

Certain fund participants have filed brief amici curiae attacking the constitutionality of § 3797(a) (3), I.R.C., 1939. We find it unnecessary to reach such issue inasmuch as we have determined that the funds were not associations taxable as corporations. However, see Burk-Waggoner Oil Ass'n v. Hopkins, 269 U.S. 110, 46 S.Ct. 48, 70 L.Ed. 183.

### Summary.

We summarize our holdings as follows:

1. The decisions of the Tax Court that the fund petitioners are associations taxable as corporations are reversed.

2. The decisions of the Tax Court holding that the percentage of profits paid LACO and hence to its members (including payments to Longstreet as to specified customers) both with respect to the individual investor accounts and the funds constitutes compensation for personal services and not a distributive share of partnership income entitled to capital gain and loss treatment are affirmed.

3. The decisions of the Tax Court that LACO members who were cash participants in the funds are not entitled to capital gain and loss treatments upon their individual investments in the funds are reversed.

4. The decisions upholding penalties under § 294(d) (1) (B) are affirmed.

5. The decisions assessing penalties under § 294(d) (2) are affirmed, subject to the modification that such penalties, if any, shall be recomputed upon the basis of the actual tax liability for each year as finally determined in accordance with the views expressed in this opinion.

Reversed in part, affirmed in part, and remanded.